**COLUMBUS (City), Plaintiff, v. HUNTINGTON NATIONAL BANK, Trustee, Defendant-Appellant, KROGER COMPANY, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 5498.   Decided August 15, 1956.

Chalmers P. Wylie, City Atty., Columbus, for plaintiff.

Luther L. Boger, Columbus, Clyde E. Lewis, Delaware, for defendant-appellant, The Huntington National Bank, Trustee.

Jenkins, Williams, Wendt, Murray & Deeg, Aubrey A. Wendt, of Counsel, Columbus, for defendant-appellee, The Kroger Company.

**OPINION**

By THE COURT.

Submitted on motion of the defendant-appellee, The Kroger Company, seeking an order dismissing the appeal on questions of law and fact for the reason that this court has no jurisdiction to entertain such an appeal.

The record discloses that the appeal is from a special proceedings in the Court of Common Pleas of Franklin County, wherein the City of Columbus through its powers of eminent domain brought an action to appropriate certain lands adjacent to Spring Street, within said city. Among such properties was a parcel located at 355 West Spring Street,

held and occupied by the Kroger Company under a lease from the Huntington National Bank of Columbus, Ohio, as Trustee, etc. The value of such premises was determined by a jury and thereafter the jury's award of $463,550.00 was paid into court by the city. The Kroger Company filed an application to have the court determine the value of its leasehold in the appropriated premises and asked the court to order such sum to be paid to it from the award of compensation. **Article IV, Section 6, Ohio Constitution** confers upon this court "such (appellate) jurisdiction as may be provided by law." In compliance with this mandate, §2501.02 **R. C.** was enacted, which became effective on October 4, 1955. This section spells out the classes of cases which may be appealed on law and fact. The case here presented appears to us to come within the provisions of Part 10 of said section, for as between the parties to this appeal the primary relief sought is by means of the "interpleader" and said section specifically provides that in this class of cases the appeal may be had on law and fact. We recognize that §719.20 **R. C.,** provides that a review of the appropriation proceedings may be had on questions of law as in other similar actions, but the appropriation of property is no longer involved here, the same having been completed and no appeal prosecuted. It is only the distribution of the fund which is in dispute and the issue has been raised by the interpleader.

The motion to dismiss will be overruled.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.

No. 5498. Decided December 7, 1956.

(FESS and DEEDS, JJ, of the Sixth District; HUNSICKER, J, of the Ninth District, sitting by designation in the Second District.)

## OPINION

By HUNSICKER, J.

This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Franklin County, Ohio.

The City of Columbus, by condemnation proceedings, took several parcels of land for expressway purposes. One of the parcels is involved in the matter now before us. This property consisted of a warehouse building held by the Huntington National Bank of Columbus, as trustee, herein called Bank, and leased to the Kroger Company, herein called Kroger.

The lease by the Bank to Kroger began May 1, 1951, and was to end April 30, 1956. The lease contained an option to renew for an additional term of five years. On June 7, 1955, a judgment in the condemnation action was filed fixing the total amount of money the City of Columbus should pay for the lands taken.

On June 22, 1955, the city of Columbus paid this condemnation money into court. On June 13, 1955, the Bank notified Kroger, in writ-

ing, that it was terminating the lease. On June 20, 1955, Kroger filed, in the Common Pleas Court, an application in this matter, and asked therein that the court determine the value of its lease hold. In that application, Kroger requested that any amount so found be paid to it from the compensation awarded in the condemnation proceedings.

On September 7, 1955, the Bank again notified Kroger in writing that under the powers reserved in the lease to Kroger, it was terminating the lease.

On April 25, 1956, the trial court determined that the lease was a valid subsisting lease of the premises, appropriated by the city of Columbus, and that the damages for the taking of the leasehold interest of Kroger, as of June 22, 1955 (the date when the city of Columbus paid the condemnation award into court) was $34,145.47.

An appeal was then lodged in this court by the Bank, who say that:

"1. The judgment of the Court of Common Pleas of Franklin County is contrary to law.

"2. The conclusions of law as found by the Court of Common Pleas are contrary to law.

"3. The judgment of the Court of Common Pleas is against the manifest weight of the evidence and contrary to the evidence.

"4. The findings of fact of the Court of Common Pleas are contrary to the evidence and are against the manifest weight of the evidence.

"5. The judgment of the Court of Common Pleas is contrary to the facts adduced at the time of the hearing.

"6. The Court below erred in finding that the lease between the appellant as the lessor and the appellee as lessee does not provide for termination upon notice in the event of condemnation.

"7. The court below erred in its finding that the notice of cancellation given by appellant to appellee upon the conclusion of the condemnation proceedings was not effective to cancel said lease in accordance with the cancellation provision therein contained.

"8. The court below erred in finding that The Kroger Company, appellee-lessee, was entitled to share in the compensation paid for the property notwithstanding the exercise by the appellant of its right of cancellation as contained in the lease."

Our principal question herein concerns the interpretation of that portion of the written lease from the Bank to Kroger, which reads as follows:

"It is mutually agreed by and between the lessor and the lessee that if during the term hereof, or any extension thereof, the demised premises or any part thereof be rendered untenantable by public authority or by fire or other casualty (except such as shall have resulted from the negligence of the Lessee), a proportionate part of the rent herein reserved, according to the extent of such untenantability, shall be abated and suspended until the premises are again made tenantable and restored to their former condition by the Lessor; and if the premises or a substantial part thereof are thereby rendered untenantable and so remain for a period of ninety (90) days, the Lessee may, at its option, terminate this lease by written notice to the Lessor; and if the premises cannot by reasonable efforts be restored to their former condition within ninety

(90) days, either the Lessor or the Lessee shall have the option of terminating this lease by written notice to the other."

There was an addenda to the original lease executed May 9, 1951, but, except for providing additional space and fixing rent, all other terms of the lease remained in full force and effect.

There is no question but that Kroger was in possession of the premises under the lease when the city of Columbus, on June 22, 1955, acquired title by reason of the condemnation proceedings.

Kroger was a party to the original action of condemnation by the city of Columbus, and by such fact knew all that transpired in the proceedings up to the time Kroger received the first notice of termination of lease on June 7, 1955. Kroger continued to occupy the premises after June 22, 1955, although at the time this matter was heard in this court, the building had been razed and the expressway was well along in its construction.

In the consideration of this problem, there can be no question but that the correct measure of damages to a tenant, on the taking of his leasehold interest by condemnation, is the market value of the use and occupancy of the leasehold for the remainder of the tenant's term, minus the agreed rent which the tenant is required to pay for such use and occupancy under the terms of the lease. 18 Am. Jur., Eminent Domain, Sec. 296, at page 938, and authorities there cited; 3 A. L. R. 2d, 290-295, and authorities there cited. See also, Platte Valley Public Power, etc. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200.

If that portion of the lease above set out, properly interpreted, does not provide by its terms for a right of termination by the Bank of the lease, in the event of condemnation proceedings, then this measure of damages rule must be followed to determine what amount of money Kroger shall receive out of the funds deposited with the Clerk of Courts on June 22, 1955, by the city of Columbus.

We think it is not to be controverted that a landlord and tenant may, by a properly worded contract, provide that the tenant shall receive no compensation when the leased premises are taken by right of eminent domain. It also is not subject to dispute that a landlord and tenant may, by a properly worded contract, provide that in the event the leased premises are taken by condemnation proceedings, the lease shall terminate. These rules are so elementary that they need no citation of authority to support them, although see Goodyear Shoe Machinery Co. v. Boston Terminal Co., 176 Mass. 115, 57 N. E. 214.

Our question here is one of interpretation of that phrase of the lease "rendered untenantable by public authority," when read in the light of the entire paragraph, quoted near the beginning of this opinion.

An examination of the authorities cited in the briefs and our own research have failed to disclose any case sufficiently similar to become persuasive. Counsel for Kroger do cite a case bearing some resemblance, in phraseology, to the instant case, viz. Siggelkow v. Arnold, 245 N. W. 629, 187 Minn. 395.

Leases of lands and buildings are prepared for specific purposes, and those containing covenants with respect to the rights of the parties

in the event of condemnation proceedings invariably contain phrases such as: "If the whole or any part of the demised premises shall be taken by federal, state, county, city or other authority for public use, or under any statute, or by right of eminent domain," then the lease terminates. United States v. Petty Motor Co., 327 U. S. 372, 375, 376; 90 L. Ed. 729, at p. 733. Or the language used may be similar to the following: "* * * in the event the premises or any part thereof, are taken through eminent domain, the future award for damages to the premises, both leasehold and reversion, shall be the sole property of the landlord * * *." In re John C. Lodge, Highway in the City of Detroit v. Siegel, et al., 340 Mich, 254, 65 N. W. 2d, 820, at p. 822.

It should be again noted in the instant case that the lease herein does not mention that the taking by public authority shall be for public use, nor is there a reference in the lease as to the rights of the parties where the property is taken by eminent domain.

Some courts in discussing the meaning of the word "untenantable," as used in leases, define such word as unfit for the tenant to carry on business. Miller Hotel Co. v. Gray, 19 S. E. 2d, 428 (Georgia Appeals); Reischmann v. L. N. Hartog Candy Co. et al., N. Y. S. 435; Acme Ground Rent Co. v. Werner, 139 N. W. 314 (Wis.).

When the city took title to the premises, it was not unfit for occupancy, although the city did tear down the building some months later; and certainly Kroger knew, when the city took title to the property, it was for the purpose of destroying the building and using the land for an expressway.

We revert them to the rule of construction of contracts, and in our attempt to determine the meaning of the paragraph under discussion, we must give the words used their usual and ordinary meaning as shown by the context in which such words are employed. **Fidelity & Casualty Co. v. Hartzell Bros. Co., 109 Oh St 566.**

The parties to this lease were not contracting with reference to their rights in the event the city of Columbus, by eminent domain, decided to appropriate this property for highway purposes.

If such had been the intent of the parties, they could very easily have inserted one of the clauses found in those cases where relief was denied the tenant because he had contracted away the right to get damages for a loss of his interest in the premises.

These parties were, by this lease, interested in those acts of public authority such as destruction by order of the health board or fire marshal. The casualty or catastrophe guarded against by the lease agreement is where the premises present a hazard which must be removed but which may be corrected by act of the parties. The phrase, "if * * * the demised premises or any part thereof be rendered untenantable by public authority * * *" does not mean if the demised premises are taken for public use, then the lease terminates. The words used show that the intention was to restore the premises to occupancy. A taking for road purposes was never contemplated by the parties. We cannot imply exceptions in the lease not shown by the language which the parties choose to use.

"The agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof." **Blosser v. Enderlin, 113 Oh St 121, 148 N. E., 393.**

We determine in this case that the Kroger Company is entitled to participate in the fund paid by the city of Columbus for the taking of the property herein.

The testimony with respect to the value of the leasehold premises was at some variance, although all witnesses agreed that if the premises could be leased it would be worth, annually, from ten cents to twenty-five cents more per square foot than the amount Kroger was paying to the Bank. The amount determined by the Court of Common Pleas, based upon an increase annually of fourteen cents per square foot, is certainly well within the testimony, and we adopt the amount so determined by the trial court as the award granted herein.

The parties may prepare a journal entry in accord with this opinion.

FESS and DEEDS, JJ, Concur.