IN RE APPROPRIATION OF EASEMENT FOR HIGHWAY PURPOSES: CARROLL WEIR FUNERAL HOME, INC., APPELLANT, v. MILLER ET AL., APPELLEES.

(No. 38814—Decided June 2, 1965.)

*Messrs. White & Rankin, Mr. Lewis A. Rankin* and *Mr. Gordon E. Williams,* for appellant.

*Messrs. Porter, Stanley, Treffinger & Platt, Mr. Lawrence D. Stanley* and *Mr. Joseph S. Platt,* for appellees.

MATTHIAS, J. The question presented by this appeal is whether appellant is entitled to any part of the funds paid over by the state for the appropriation of property which it had occupied as lessee.

A lessee has a property right in the leasehold and, in the absence of an agreement to the contrary, is entitled to compensation if it is appropriated by eminent domain. See *Foote* v. *City of Cincinnati,* 11 Ohio 408. However, there is nothing to prevent the parties from changing their respective rights by agreement. A lessor and lessee may, by including a properly worded provision in their lease, provide that upon appropriation of the property under eminent domain the lessor may at his option terminate the lease. Under such an agreement, if the property is appropriated, the lessor may terminate the lease. The lessee would then have no property right in the premises. Thus, he would have no right to compensation. 1 Casner, American Law of Property, 291, Section 3.55; see, *e. g., Goodyear Shoe*

*Machinery Co.* v. *Boston Terminal Co.*, 176 Mass. 115, 57 N. E. 214; *Hawaii* v. *Arneson*, 44 Haw. 343, 354 P. 2d 981; *Select Lake City Theatre Operating Co.* v. *Central National Bank*, 277 F. 2d 814.

Appellees purported to exercise their option by serving a written notice of termination on appellant. Our decision, therefore, depends upon whether the lease involved in the instant case gives them the power to terminate the lease. The applicable provision of the lease reads as follows:

"3. In the event the entire building in which said premises are located should at any time during the existence of this lease be condemned by public authority, then said lessors may at their option terminate this lease."

Appellant claims that this provision does not give the lessors the right to terminate the lease if the property is appropriated for public use. It contends that the term, "condemn," should be restricted to mean a tear-down or demolition order under the police power. See, *e. g.*, Section 3737.01, Revised Code; Chapter 4109, Columbus City Code.

Appellant argues that, since the attorney for the appellees drew the lease and since the law abhors a forfeiture, the provision should be construed strictly against the appellees. Rules of construction are aids in ascertaining the intent of the parties when the language used is ambiguous. They should never be invoked if the language is clear. If the meaning is apparent, the terms of the agreement are to be applied, not interpreted. 17 American Jurisprudence 2d 627, 646, Contracts, Sections 241, 253; 51 Corpus Juris Secundum 860, Landlord and Tenant, Section 232; 11 Ohio Jurisprudence 2d 378, Contracts, Section 133.

In interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning. Paragraph three of the syllabus of *Morgan* v. *Boyer*, 39 Ohio St. 324. The meaning given the term, "condemn," by the trial court was a proper one. Webster's Third New International Dictionary gives as a definition of "condemn": "To pronounce to be taken for public use under the right of eminent domain." See, also, Black, Law Dictionary (4 Ed.); New Century Dictionary (1953). The construction

urged by appellant is strained and unnatural. When used in connection with real property, "condemn" ordinarily refers to the appropriation of property in eminent domain proceedings. Section 4, Article XVIII of the Ohio Constitution, uses the term, "condemnation," to mean eminent domain proceedings, and various statutes use "condemn" and "condemnation" in the same sense. See, e. g., Sections 511.11, 2709.34, 5911.05, 6101.18, 6115.22, Revised Code. Courts and textwriters use the words, "condemn" and "appropriate," interchangeably. See, e. g., *Danforth* v. *United States*, 308 U. S. 271, 60 S. Ct. 231, 84 L. Ed. 240; *Wulzen* v. *Board of Supervisors*, 101 Cal. 15, 35 P. 353; *Van Patten* v. *City of Omaha*, 167 Neb. 741, 94 N. W. 2d 664; 2 Nichols, Eminent Domain, 41, Section 5.23(2); Casner, *supra*, Sections 3.55, 12.132, and 13.17; 2 Powell, Real Property, 286, Section 242; 19 Ohio Jurisprudence 2d 408, Eminent Domain, Section 1.

*Columbus* v. *Huntington National Bank*, 75 Ohio Law Abs. 214, on which appellant relies, is readily distinguishable from the instant case. The lease in that case contained the phrase, "rendered untenantable by public authority or by fire or other casualty," instead of the phrase, "condemned by public authority." Although the phrase, "rendered untenantable by public authority," is broad enough to include being dispossessed because the property has been appropriated, the language must be taken in the sense which will best effecutate what it is reasonable to suppose was the real intention of the parties. 17 American Jurisprudence 2d 639, Contracts, Section 247. Unlike "condemned" the term, "untenantable," is not ordinarily used with reference to eminent domain proceedings, and it is unlikely that the parties intended it in that sense. Since they added the phrase, "or by fire or other casualty," it is more likely that they had in mind an action of public authority incident to a fire or casualty.

When the disputed provision is read in context with the entire lease appellant's argument is even less tenable. The lessee is required to insure the buildings and improvements against damage from fire and windstorm. In the event of damage or destruction, the insurance proceeds were to be deposited to the joint credit of the lessors and lessee and were to be

used to repair or rebuild the buildings and improvements and for no other purpose. It is unlikely that the parties intended that, if the building was completely destroyed by fire, it was to be rebuilt, but, in the event of a partial destruction which rendered the building beyond repair followed by a demolition order, it would have been up to the lessors to determine whether it would be rebuilt. The construction urged by appellant would in such an instance allow the lessors to keep the insurance proceeds. The lease specifically provides that such proceeds are to be used for repairing or rebuilding the buildings and improvements and for no other purpose.

We conclude that the phrase, "condemned by public authority," as used in the lease involved in the instant case, with reference to the buildings and land comprising the leasehold and read in conjunction with the elaborate insurance provisions was intended by the parties to include an appropriation of the property by eminent domain.

On the effective date of the appropriation of the premises, appellees had, by the provisions of the lease, the option to terminate the lease. They exercised this option by serving on appellant written termination of the lease. The appellant no longer had a property right in the premises and, therefore, had no right to share in the money deposited by the Director of Highways.

Since there was no genuine issue as to any material fact, and reasonable minds could only construe "condemned by public authority" in context as including the exercise of eminent domain, the trial court was correct in granting summary judgment for the appellees.

*Judgment affirmed.*

Taft, C. J., O'Neill, Schneider and Brown, JJ., concur.
Zimmerman and Herbert, JJ., dissent.

Zimmerman, J., dissenting. "Forfeitures of leaseholds are not favored in equity or at law. Accordingly, a provision for such a forfeiture must be strictly construed and doubts resolved against the person asserting the forfeiture." 33 Ohio Jurisprudence 2d 671, Section 416.

As noted in the majority opinion, the lease in issue was prepared by attorneys representing the lessors, and the paragraph of the lease which is controlling reads:

"3. In the event the entire *building* in which said premises are located should at any time during the existence of this lease be *condemned* by public authority, then said lessors may at their option terminate this lease." (Emphasis supplied.)

Applying the rule against forfeitures, it seems to the writer that the emphasis on the word, "building," peculiarly used in connection with the term, "premises," and the use of the word, "condemned," instead of the word, "appropriated," are a strong indication that all parties to the lease had in mind the condemnation and destruction of the building on the premises by order of public authority because of a dangerous and untenantable condition rather than a taking of the entire premises upon which the building was located for public use as a highway. In fact, an appropriation of the premises for any public use was not in prospect at the time the lease was executed.

In its ordinarily accepted meaning the noun, "building," embraces only a structure including the space between walls and roof, whereas the more comprehensive term, "premises," embraces both *lands and tenements*.

The lessee is entitled to participate in the amount paid for the appropriated premises, and I, therefore, respectfully dissent from the judgment of affirmance herein.

HERBERT, J., concurs in the foregoing dissenting opinion.