**BOARDMAN TOWNSHIP BOARD OF TRUSTEES, Appellee,**

v.

**FLEMING, d.b.a. Sun Castle Enterprises, Inc., Appellant.**

[Cite as *Boardman Twp. Bd. of Trustees v. Fleming* (1996), 110 Ohio App.3d 539.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 57.

Decided April 24, 1996.

*James A. Philomena,* Mahoning County Prosecuting Attorney, and *Karen Markulin Gaglione,* Assistant Prosecuting Attorney, for appellee.

*Michael G. Marando* and *Patrick K. Wilson,* for appellant.

LAWRENCE GREY, Judge.

This case is an appeal from the Mahoning County Court of Common Pleas. It involves a question of statutory construction and requires this court to construe the extent of the authority granted by statute to township trustees to appropriate property.

On August 13, 1991, Boardman Township Trustees passed a resolution declaring it necessary to appropriate 3.8 acres of real property located on Tippecanoe Road in Boardman Township, Mahoning County, Ohio. The board's purpose was to use the land to construct a storm water retention system to control a flooding problem in the area.

On September 10, 1991, the board filed a petition for appropriation of the property against Bruce Peskor. Peskor conveyed the property to appellant, William Fleming, d.b.a. Sun Castle Enterprises, Inc., on September 26, 1991 pursuant to a previously existing option contract. Peskor was dismissed as a party, and on November 8, 1991, the board amended its petition for appropriation, naming Fleming as the respondent. The board also deposited with the Mahoning County Clerk of Courts the sum of $26,300, which remains on deposit.

On November 21, 1991, Fleming filed a request for a preliminary hearing on the issue of necessity, but the request was withdrawn in January 1992, so the question of necessity is not an issue in this case. Nor is the value of the property at issue. Just before the trial date, the parties agreed that for purposes of this appropriation proceeding, the fair market value of the property taken was $26,300.

The issue in this case arises out of a motion to dismiss, filed by Fleming on January 10, 1992, asserting that the board's authority to appropriate the property is limited by statute to certain specific purposes, and that the purpose of this appropriation as stated in its petition was not one of those authorized by statute. The board opposed the motion to dismiss on the grounds that the township did have the statutory authority. After a hearing, on March 5, 1992, the trial court overruled appellant's motion to dismiss.

Fleming moved the trial court to declare the judgment entry dated March 5, 1992 a final appealable order. Since the issue of value was still unresolved, the trial court overruled the motion and the case was set for trial. As noted above, the issue of value was settled by agreement, and on February 22, 1995, the trial court found that all issues had been ruled upon and filed a judgment entry reflecting the agreement and declared that the entry was a final appealable order.

Appellant took this appeal, designating one assignment of error:

"The trial court erred to the prejudice of the respondent-appellant in overruling its motion to dismiss petitioner/appellee's complaint."

In support of this assignment of error, appellant argues that eminent domain is the exercise of sovereign power. A political subdivision, such as a township, does not have the power of eminent domain unless it has been granted that authority by the sovereign power, the state of Ohio. *Emanuel v. Twinsburg Twp.* (1952), 94 Ohio App. 63, 51 O.O. 275, 114 N.E.2d 620. Appellant maintains that there is a presumption against the delegation of the power and the state will never be presumed to have parted with a portion of its sovereignty, even to its own citizens, unless there is a clear showing of an affirmative grant of that power. *Id.*

Appellant contends that a township is a political subdivision created for the purpose of carrying out certain duties which are specifically established by law. To meet those duties, townships are granted and exercise certain rights and privileges, but these, too, are specifically established by law. Appellant maintains that although the Ohio legislature might have delegated the power of eminent domain to a township for any purpose, it did not do so. Appellant contends that a township's power of eminent domain is not a general power, but limited, as set out in R.C. 511.11. It does not include the purpose intended by the board in this case, *i.e.*, flood control.

Appellee agrees with appellant's basic statement of the law as to sovereignty and the need for a statutory delegation of the power of eminent domain. However, appellee contends that such authority was in fact granted as can be seen from a reading of R.C. 511.11 and 719.01(J). Thus, this court must construe and apply these two section of the code.

The standard of review for statutory construction is well established. In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322–1323. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461–462.

In interpreting a statute, the words must be taken in their usual, normal, or customary meaning. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817. Courts do not have authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80–81. We may not "restrict, constrict, qualify, narrow, enlarge, or abridge" the clear meaning of a statute to suit the particular facts of a case at bar. *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370. It is our duty to give effect to all of the words used in a statute. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441.

The two sections read as follows.

"511.11   Acquisition of property.

"The board of township trustees may acquire by purchase, appropriation, or otherwise, any private or public lands which it might deem necessary for its use, and, in the case of condemnation, such proceedings shall be governed by sections 719.01 to 719.21, inclusive, of the Revised Code."

"719.01   Appropriation of property by municipal corporations.

"Any municipal corporation may appropriate, enter upon, and hold real estate within its corporate limits:

" * * *

"(J) For sewers, drains, ditches, public urinals, bathhouses, water closets, and sewage and garbage disposal plants and farms[.]"

Mindful of our duty to carry out the legislative intent, this court finds, nonetheless, that the intent is not all too clear. For example, R.C. 511.11 is included in R.C. Chapter 511, which is entitled "Memorial buildings; Halls; Parks." Appellant argues that since this appropriation section is included in the chapter on buildings and parks, condemnation power is limited to those purposes. This argument is persuasive to some extent, but by looking at R.C. 511.10 one sees that that section deals with hiring, paid holidays, and uniforms for township employees. We assume that the legislature did not intend to limit the scope of

the township's authority in employment matters to just park and memorial employees but that all township employees would get paid holidays, and so on. It is poor draftsmanship, perhaps, to have included this section in R.C. Chapter 511, but the legislative intent can be determined.

In a similar vein, in examining R.C. 511.11 we see the same kind of lack of precision but are still able to fathom legislative intent. The first part of R.C. 511.11 reads:

"The board of township trustees may acquire by purchase, appropriation, or otherwise, any private or public lands which it might deem necessary for its use * * *."

This language seems to be an extraordinarily broad grant of appropriation power for almost any purpose, and such a broad construction has been questioned. See 1985 Ohio Atty.Gen.Ops. No. 85–025. It seems likely that the legislature intended this broad grant of power to be modified by the language that follows:

" * * * and, in case of condemnation, such proceedings shall be governed by sections 719.01 to 719.21, inclusive, of the Revised Code." R.C. 511.11

That modifying language, however, also creates an ambiguity. The first phrase uses "appropriation," and the modifying phrase uses "condemnation," perhaps indicating a different intent even though the words "condemn" and "appropriate" can be used interchangeably and have been held to mean the same thing. *Carroll Weir Funeral Home v. Miller* (1965), 2 Ohio St.2d 189, 31 O.O.2d 402, 207 N.E.2d 747.

Appellee contends that the reference to R.C. 719.01 to 719.21 is substantive, that is, authorizing appropriations for the purposes listed in that chapter. Appellant argues that the reference to R.C. 719.01 to 719.21 is only procedural, that is to say, when the township seeks to appropriate property, it is to follow the same procedures that a municipal corporation uses. While both arguments make sense, we believe the position of appellee more accurately reflects legislative intent.

As originally enacted, when the Revised Code replaced the General Code in 1953, R.C. 719.01 to 719.21 dealt with the whole area of appropriation. R.C. 719.01 through 719.05 were substantive sections, while R.C. 719.06 to 719.18 were procedural sections, which have since been repealed and replaced by R.C. Chapter 163. Since R.C. 511.11 makes specific reference to the whole of R.C. 719.01 to 719.21, it would appear that the legislature intended application of R.C. Chapter 719 to be more than merely procedural. Had the legislature intended only the procedural sections to apply, it would have limited its reference to the procedural sections, R.C. 719.06 to 719.18.

Appellant argues that appellee had the burden to prove a clear and specific statutory delegation of the power to appropriate property for the purpose of constructing a storm water retention system. We agree, but feel that appellee met that burden because the application of R.C. 511.11 necessarily implies the application of R.C. 719.01 *et seq.* Although the Ohio legislature has enacted numerous statutes conferring the power of eminent domain on various political subdivisions, including townships, it has not done so with the degree of specificity to be hoped for.

The attorneys general of Ohio have reached various conclusions on the question of the extent of a township's authority in this area. See, for example, 1954 Ohio Atty.Gen.Ops. No. 54–437, 1958 Ohio Atty.Gen.Ops. No. 58–579, and 1985 Ohio Atty.Gen.Ops. No. 85–24, which summarizes as follows:

"A board of township trustees has statutory authority to acquire property for specific purposes. See, *e.g.,* R.C. 505.26 (acquisition of sites for township hall, township park, public library, bridges, viaducts, and space for township offices); R.C. 505.37 (acquisition of site for fire fighting purposes); R.C. 505.50 (acquisition of site for township police district); R.C. 517.01 (acquisition of site for township cemetery). The legislature has also empowered boards of township trustees to *'acquire by purchase, appropriation, or otherwise, any private or public lands which it might deem necessary for its use'* (emphasis added). R.C. 511.11. In order for the township trustees to acquire property under authority of R.C. 511.11, such acquisition must be for a township use."

In the opinion cited above, the Attorney General found that taking property for the purpose of industrial development and making industrial sites, while perhaps desirable, was not necessary. The opinion noted the right to take property for a necessary township use.

■ In this case, we find the taking of property for a storm water retention system is a necessary township use. When a township builds roads, there will be runoff, and if the runoff is sufficient to cause flooding, by necessity and by implication, the township's taking of property under the authority of R.C. 511.11 and R.C. 719.01 is for a township use.

We find no case directly on point, but the case of *Boehle v. Colerain Twp.* (Sept. 18, 1985), Hamilton App. No. C–840678, unreported, 1985 WL 11468, is related. In that case, the issue was not the power to appropriate, but rather the power to compensate. In its opinion the court stated:

"We conclude, therefore, that the General Assembly incorporated the provisions of R.C. 719.01(J), by reference, into R.C. 511.11 and intended to grant to a board of township trustees the same authority conferred upon a municipal

corporation to appropriate, enter upon and hold real estate within its limits for, *inter alia,* sewers and drains."

Based on the foregoing, we find that the Boardman Township Board of Trustees has authority to appropriate Fleming's property for its intended purpose. The assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

O'NEILL, P.J., and COX, J., concur.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.