OPINION
Plaintiff-appellant Frank Fuschino brought this action against defendant-appellee Ron Smith for damages incurred by reason of Smith's failure to timely complete the building of an outdoor deck pursuant to a construction contract in which it was specified that time was of the essence. Smith counterclaimed. The trial court entered judgment against Fuschino on his claim, and in favor of Smith on the counterclaim, awarding damages to Smith.
Fuschino appeals, contending that the trial court erred by failing to enforce the terms of the contract, and by awarding Smith damages that are not supported by the record.
We conclude that the trial court erred by holding that Fuschino, rather than Smith, breached the contract, and awarding damages accordingly. Consequently, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accordance with this opinion.
 I
Fuschino and Smith entered into a written contract dated May 11, 1998. Pursuant to the contract, Smith was to construct a deck on the back of Fuschino's residence. The contract required Fuschino to provide all necessary materials and to pay Smith six thousand dollars for labor. The contract also provided that "time is of the essence," and specified that the completion date was May 31, 1998. The contract further provided that Fuschino would pay Smith a $500 bonus if the deck was completed early. It also contained a clause requiring Smith to pay Fuschino the sum of $50 per day for each day after May 31 that the deck was not completed. The construction was not completed by May 31, and Fuschino terminated the contract some time thereafter. To complete the deck Fuschino contracted with the last worker hired by Smith on the job.
Fuschino filed this action against Smith. Smith filed a counterclaim. At a bench trial, the following evidence was adduced.
Fuschino testified that an architect suggested by Smith, Craig Dillon, rendered a three-page drawing of the deck and that Dillon prepared the contract. He further testified that four men began construction on May 11. Fuschino testified that Smith's workers had the plans when they first started working. He testified that Smith left for Florida on May 14, and did not return until May 28. At that time, Smith told Fuschino that he needed $1,000 to pay the workers. Fuschino testified that, as of May 23, he had already paid Smith $3,500 of the $6,000; $500 more than required by the contract.[1] Therefore, he did not make further payment.
Fuschino testified that the deck was not completed by May 31, and construction continued into the next week. However, no workers showed up at the site on June 5. Fuschino learned that Smith had fired all of them on June 4. Therefore, Fuschino called Smith, who informed him that Damon Kight would complete the work on the deck. Fuschino testified that Smith left town again, on June 11. When no one had appeared on the job for two weeks, Fuschino called Kight, who began work on the deck on June 22. In the meantime, on June 19, 1998, the architect gave Fuschino a letter indicating that Fuschino had grounds for termination of the contract, based on Smith's failure to carry out the work in accordance with the contract.
Fuschino testified that Kight informed him that Smith took him off the job on July 6. Fuschino terminated the contract on July 9. He then asked Kight to complete the construction; Kight began work on July 10. The deck was not completed until October 19. Fuschino paid Kight the sum of $9,155.80 to complete the deck.
According to Dillon, he presented the deck plans to Smith and discussed the construction with him. He testified that he had no doubt that Smith was aware of the scope of the project. He further testified that Smith's workers installed a beam, supported by a concrete pad, that was not required by the plans. He testified that the beam was not a necessary addition, and that no change order was requested regarding its installation.[2] In fact, he testified that no change orders regarding any portion of the construction were ever requested, in accordance with the contract. Smith corroborated this. Dillon testified that Smith failed to obtain the building permit as required by the contract. He also testified that he wrote a letter for Fuschino stating that there were valid grounds for terminating the contract. Dillon also testified that the work done by Smith was poor and that Kight had to perform some remedial work. Finally, he testified that Kight's charges were reasonable.
Smith testified that during his career as a contractor, he had five contracting jobs. He testified that he gave up his contractor's license in December, 1998, because of declining health. He testified that the deck was seventy per cent complete on May 31. He also testified that he did not discuss the plans with the architect, but stated that he got the drawings after he got the contract. He testified that he complied with all of the contract terms except the completion date. He admitted that he received calls from Fuschino regarding the lack of progress. He also admitted that he never requested any change orders. He testified that when he returned from Florida, he realized that the job would take longer than anticipated. Finally, he testified that it would have taken him only two to three more weeks to complete the job, and that he was seeking to be paid the entire $6,000 plus "the extras."[3]
Smith's son, a licensed contractor, testified that he went on the job site four or five times. He testified that the work done by his father was competent, and that it should only have taken Kight one week to finish the job. He also testified that it should only have cost Kight $1,300 to complete the job. Finally, he testified that for this type of project, it is normal to set liquidated damages at $20 to $25 per day late in the completion of the work.
Following trial, the court dismissed Fuschino's complaint and awarded Smith $800.78 on his counterclaim. Fuschino appeals from this judgment.
 II
Fuschino's First Assignment of Error is as follows:
 THE TRIAL COURT STRAYED FROM ITS DUTY TO ENFORCE THE CONTRACT BETWEEN THE PARTIES AND SUBSTITUTED ITS OWN TERMS AND PROVISIONS DIFFERENT FROM THOSE IN THE CONTRACT.
 Fuschino contends that the trial court erred by failing to enforce the contract. Specifically, he argues that the trial court erred because it found that: (1) Smith's failure to complete the project in a timely manner was excusable and did not constitute a breach of the contract terms; (2) Fuschino had waived the right to seek damages by terminating the contract; (3) the provision for liquidated damages could not be enforced.
The intent of the parties to a contract is presumed to reside in the language employed in the agreement. Kelly v. Medical Life Ins. Co.
(1987), 31 Ohio St.3d 130, paragraph one of the syllabus. When a contract is clear and unambiguous, a court cannot apply principles of construction to vary its terms. Carroll Weir Funeral Home v. Miller (1965),2 Ohio St.2d 189, 192. A contract does not become ambiguous by reason of the fact that its operation will work a hardship upon one of the parties. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 362.
We begin with the issue of whether Smith breached the agreement. The trial court found that the failure to timely complete the deck by the May 31 deadline did not constitute a material breach of the contract. It further found that Smith had substantially completed the job, and that the delay in completion was excused by weather, plan changes and employment disputes.
The contract clearly stated that time was of the essence, and that the work was to be substantially completed, as certified by the architect, by May 31.[4] The contract further specifies that any change in the contract completion date shall be changed only by written change order. When a contract specifies that time is of the essence, a delay in performance is generally viewed as a material breach. 18 OJur3d (1980), Contracts § 306.
The evidence shows that as of May 31, the deck was not finished, and had not been certified as substantially complete by the architect. The evidence further shows that Smith did not seek any change order regarding the time for performance. Although Smith testified that the work was seventy per cent complete by May 31, there is no evidence to indicate that the architect ever certified the job to be substantially complete. Smith admits that the work was not completed in accordance with the contractual time limits.
The record also shows that as of July 6, the date that Smith took Kight off the job, there still was no certification by the architect that the deck was substantially complete. Furthermore, there is no competent evidence to indicate that Smith was, as the trial court found, ready, willing and able to complete the contract. Smith had taken Kight off the job; therefore, we cannot say that he was ready, willing or able to complete the construction. To the contrary, the evidence in the record compels a finding that Smith breached the terms of the contract by failing to substantially complete the work within the time specified.
We do not agree with the trial court's finding that the breach was excused by weather, employment problems or plan changes. While Smith testified that there were "a few weather days," a statement he later amended to "a couple" of days, there was no testimony that the weather was unusual, or that it prevented timely completion of the project. Furthermore, the record does not support a finding that employment problems or plan changes excused the delay. Had such issues surfaced, problems could have been dealt with by the use of a change order extending the time for performance.
Likewise, we cannot conclude that Fuschino waived the time-is-of-the-essence provision. The trial court is correct in noting that even when a contract specifies that time is of the essence, the time for performance may be waived. 18 O Jur3d (1980), Contracts § 245. "A party is not in default so long as his delay is acquiesced in." 18 OJur3d (1980), Contracts § 306.
While the record shows that even after the May 31 completion, Fuschino permitted Smith to continue working on the project, there is no evidence to establish that he acquiesced in the delay. The mere fact that he attempted to get the deck completed by Smith does not, by itself, indicate acquiescence. Instead, the evidence shows that Fuschino recognized that the delay constituted a breach when he sought the architect's approval for termination, and that Fuschino's purpose in permitting Smith to continue working was not to excuse the breach, but instead was to pursue the most expedient course toward the completion of the project. We find, from the evidence in this record, that the completion date provisions were not waived. We further find that pursuant to the terms of the contract, Fuschino was entitled to terminate the contract and to seek damages for the cost of completion of the deck.
We conclude that Fuschino is entitled to damages for the cost of completion of the deck in accordance with Article 20.2 of the contract which states that the measure of damages is the difference between additional costs and the unpaid balance of the contract price. The record before us is not entirely clear as to the exact amount of the cost of completion. Therefore, this issue is remanded to the trial court for a determination of the amount of damages due Fuschino.
Finally, we address the issue of whether the provision providing for liquidated damages is enforceable. The trial court found that the clause constituted a penalty because it bore no reasonable relationship to the actual damages suffered by Fuschino, and therefore, found the clause unenforceable. In addressing this type of issue, this court has previously stated as follows:
 The question of whether a stipulation in a contract constitutes liquidated damages, a penalty or forfeiture is a question of law. Therefore, this court reviews this question de novo.
 Generally, parties are free to enter into contracts that include a provision which apportion damages in the event of default. However, in certain circumstances, complete freedom of contract is not permitted for public policy reasons. When stipulated damages constitute a penalty, freedom of contract is restrained. "Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, '[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.' " A punitive remedy subjects the breaching party to a liability "disproportionate to the damage which could have been anticipated from breach of the contract * * *." However, contracting parties may provide for damages to be paid in the event of a breach if the provision does not disregard the principle of compensation; these damages are considered to be liquidated damages.
 The test to determine whether a contract provision for stipulated damages provides for liquidated or punitive damages (forfeiture) is the following:
 Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
 Westbrook v. Western Ohio Health Care Corp. (Mar. 17, 2000), Montgomery App. No. 17417, unreported, citations omitted.
In applying this test, our first inquiry is to determine what injury these damages were designed to compensate. In this case, Fuschino argues, and Smith does not deny, that the liquidated damages clause was created to compensate Fuschino for the loss of use and enjoyment of the deck for each day that its construction exceeded the assigned completion date.[5] With this in mind, we can now apply the above test.
First, we must determine whether the damages for the loss of use and enjoyment of the deck would be "uncertain as to amount" and difficult to prove. It would appear so. From the evidence in the record, it is clear that Fuschino wanted to use the deck during the summer months, and had even planned a large party for which he needed the extra space the deck would have provided. This type of damages would ordinarily be difficult to determine.
Second, we must determine whether the contract is so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intent of the parties. We, like the trial court, conclude that the amount of damages was disproportionate to the actual damages suffered by Fuschino. The evidence indicates that the amount of the liquidated damages clause was set by the architect; but there is no evidence to reveal the basis for the amount. The only testimony regarding the amount of money that should have been assessed as liquidated damages was provided by Mike Smith, who indicated that the normal amount provided for liquidated damages for this type of project is less than one-half of the amount provided for in the subject contract.
Under the facts and circumstances of this case, we conclude that Fuschino's claim for liquidated damages in the amount of $7,050 bears no reasonable relationship to his actual damages. At most, the damages from the loss of use of the deck were nominal. There is evidence in the record to support the trial court's conclusion that the clause imposed a penalty. Consequently, we conclude that the trial court did not err by deeming the liquidated damages provision to be unenforceable.
The First Assignment of Error is sustained in part and overruled in part.
 III
Fuschino's Second and Third Assignments of Error provide as follows:
 THE TRIAL COURT IMPROPERLY AWARDED DAMAGES TO THE DEFENDANT IN HIS COUNTERCLAIM WHERE THE UNCONTROVERTED EVIDENCE SHOWED THAT DEFENDANT BREACHED THE CONTRACT.
 THE TRIAL COURT INCORRECTLY INCLUDED IN THE JUDGMENT ON THE COUNTERCLAIM REIMBURSEMENT TO THE DEFENDANT FOR SUMS PAID BY THE PLAINTIFF.
 Fuschino contends that the trial court erred by awarding Smith damages on his counterclaim. Alternatively, he argues that if there was a basis for awarding the judgment, the amount awarded by the trial court was erroneous.
Smith's counterclaim set forth two claims for relief. First, he claimed entitlement to the remaining $2,500 owed for labor under the terms of the contract. His second claim was for $3,500, which he claimed was owed pursuant to an oral contract for "extras."
The trial court found that the $3,500 payment made by Fuschino "adequately compensated [Smith] for the value of his services at the time of [the] termination." The trial court, however, found that although Fuschino was required to pay for all materials, Smith had advanced payment for the following materials for which he was entitled to be reimbursed: (1) Concrete Pad — $152.25; (2) Concrete Supplies — $37.42; (3) Gas Line Supplies — $36.11; and (4) Fire Pit Supplies — $575.00
From our review of the record, we find no evidence to support a finding that Smith sought reimbursement for, or even that he advanced any monies for, the gas line or fire pit supplies.
With regard to the concrete pad and concrete supplies, the record shows that Smith sought reimbursement for labor associated with the installation of a concrete pad under the deck's hot tub. His testimony indicates that the concrete pad was not a part of the original construction plan, but rather it was one of the "extras" performed pursuant to an oral contract for which he sought payment. The invoices submitted by Smith in support of his claim do not specify any costs for material, but merely set forth the cost of the labor involved with the installation of the pad. Since the trial court specifically found that Smith had been adequately compensated for his labor costs up to the point of termination, a finding not contested by Smith, we conclude that he is not entitled to compensation for the labor associated with the pad. Furthermore, as noted, Smith acknowledged that the pad was not a part of the original contract. There is no evidence to support the claim that an oral contract was entered into for the construction of the pad, and no change order was executed authorizing the work. Therefore, Smith is not entitled to compensation for work which he performed without benefit of a change order or contract authorizing the work.
Accordingly, Fuschino's Second and Third Assignments of Error are sustained.
 IV
Fuschino's Assignments of Error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings in accord with this opinion.
 ________ FAIN, J.
GRADY, P.J., and KERNS, J., concurs.
(Honorable Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] According to the contract, Fuschino was to pay $3,000 after two weeks of construction, and pay the remaining $3,000 at completion.
[2] The contract specifies that any changes regarding the time for completion or for changes to the plan could be made only by written change order.
[3] The "extras" sought by Smith include costs for excavating and a concrete pad.
[4] The trial court found that the completion date specified in the contract was not reasonable. However, the contract document clearly states that "[b]y executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work." Given the fact that the parties agreed to this provision, and that it is clear and unambiguous, the trial court had no authority to substitute its judgment regarding whether the time set was reasonable. Although no one is arguing that the time set for the completion of the project was unconscionable, we note that the record would not support that argument, in any event. It appears reasonably likely that the work could have been timely completed if a sufficient number of competent workmen had worked steadily on the job. Perhaps Smith underbid the job. That would not make the contract unconscionable.
[5] We note that the trial court found that Fuschino's complaint sought both liquidated and actual damages, and stated that "legally [Fuschino] may not collect" both. We think that the trial court's finding shows that it misunderstood the complaint, and ignores the fact that Fuschino has stated two separate claims for the damages. The first claim, for actual damages, arises from the loss incurred as a result of Fuschino's having had to hire another to finish the project. The second claim, for liquidated damages, was based upon the loss of use and enjoyment of the deck during the interval between the time that it was supposed to have been completed and the time when it was, in fact, completed. In this circumstance, Fuschino is not barred from seeking both actual and liquidated damages since the two are based upon separate losses.