No. 20-569
*Deutsch Inc. v. Sherwin-Williams Co.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of October, two thousand twenty.

PRESENT:
> JOHN M. WALKER,
> SUSAN L. CARNEY,
> MICHAEL H. PARK,
> > *Circuit Judges.*

_____

DEUTSCH INC.,

> *Plaintiff-Appellant,*

> v.                                                                                No. 20-569

THE SHERWIN-WILLIAMS COMPANY,

> *Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:          DANIEL J. KORNSTEIN (Samuel Shapiro, David Berman, *on the brief*), Emery Celli Brinckerhoff & Abady LLP, New York, NY.

FOR DEFENDANT-APPELLEE:          NICHOLAS J. SECCO (Trevor G. Covey, Trevor J. Illes, *on the brief*), Benesch,

Friedlander, Coplan & Aronoff LLP, Cleveland, OH.

FOR AMICUS AMERICAN ASSOCIATION
OF ADVERTISING AGENCIES, INC.: Matthew T. McLaughlin, Elise M. Gabriel, Venable LLP, New York, NY.

Appeal from the judgment of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 7, 2020, is **AFFIRMED**.

This diversity action was brought by New York advertising agency Deutsch Inc. ("Deutsch") against Ohio corporation The Sherwin-Williams Company ("SW"), alleging one count of breach of contract. Deutsch charged that SW owes it 90 days' worth of fees, totaling approximately $2.4 million. The district court granted SW's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Deutsch appeals. For the reasons set forth below, we affirm the dismissal.

On November 7, 2014, the parties entered into a contract under which Deutsch would provide advertising services to SW (the "Contract"). Under the Contract, which established the overall structure of the relationship, the parties agreed to execute separate statements of work ("SOWs") that would delineate the particular advertising projects that Deutsch would work on and how much SW would pay. From 2014 through 2017, the parties agreed to five SOWs. According to the complaint, following the expiration of the fifth SOW at the end of calendar year 2017, SW stopped making payments of any kind to Deutsch. Citing the contractual provisions outlined below, Deutsch sued SW seeking payment of 90 days' worth of fees at the monthly rate specified in the fifth SOW.

We review de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), "accepting all factual allegations as true and drawing all reasonable inferences in

favor of the plaintiff." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

By its terms, the Contract is governed by Ohio law. J.A. 21 ¶ 12. Under Ohio law, the following rule applies:

> If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term.

*Davis v. Loopco Indus., Inc.*, 609 N.E.2d 144, 145 (Ohio 1993). Ohio courts further instruct that "the words [of a contract] used should be read in context and given their usual and ordinary meaning." *Carroll Weir Funeral Home, Inc. v. Miller*, 207 N.E.2d 747, 749 (Ohio 1965).[1] In addition, "a writing . . . will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997).

Deutsch contends that, under the Contract, SW was obligated to continue to pay monthly fees at the rate specified in any lapsed SOW until a new SOW is signed. It further submits that SW terminated the Contract by ceasing to make payments at the beginning of 2018, and that under the Contract's terms, upon this termination, SW became obligated to pay Deutsch 90 days' worth of fees at the monthly rate specified in the lapsed fifth SOW. Deutsch also argues, however, that SW must make this payment regardless of whether the Contract was terminated: "[W]hether or not the Contract was terminated, Sherwin-Williams is still obligated to continue paying the Monthly Fee." Appellant's Br. at 14.

Deutsch principally relies on paragraph 3(c) of the Contract to support its argument that SW must continue to pay the most recent monthly fee set by an SOW after that SOW lapses. In relevant part, that paragraph reads as follows:

---

[1] In quotations drawn from case law, this Order omits all alterations, citations, emphases, footnotes, and internal quotation marks unless otherwise indicated.

> Prior to the end of each contract year of the Term, Sherwin-Williams and Agency will review Agency's compensation to make certain it is consistent with the service requirements of the account for the following contract year; provided, however, that *the Monthly Fee will continue to be billed by Agency and paid by Sherwin-Williams until different compensation terms are agreed upon in writing between the parties.*

J.A. 15 ¶ 3(c) (emphasis added). Citing the emphasized phrase, Deutsch argues that the clause means that, when an SOW lapses, SW must continue to pay the Monthly Fee agreed on in the SOW "until different compensation terms are agreed upon in writing between the parties." *Id.* Like SW, we read it otherwise: looking at the sentence in its entirety, the conclusion is unavoidable that the obligation is limited. Thus, the first half of the sentence explicitly cabins SW's continued payment obligation to one specific circumstance: when the parties are reviewing Deutsch's compensation at "the end of each contract year of the Term." *Id.* By its plain language, therefore, this provision applies only to a yearly compensation review of the rate of compensation to be paid on SOWs during the year following the anniversary of the Contract's signing— November 7, 2014—and not to a lapsing SOW.[2]

This interpretation is further supported by the same paragraph's definition of the "Fee" owed by SW:

> Sherwin-Williams will pay Agency a fee specified on Statements of Work (the "Fee"), which will be billed and earned monthly in equal installments unless otherwise agreed in a Statement of Work (the "Monthly Fee").

*Id.* The Contract thus defines "Fee" with reference to the SOWs alone; it includes no provision for payments not specified in the SOWs.

The fifth SOW provides, "The fee for Services will be earned monthly for services provided and invoiced in 12 equal monthly payments of $815,154.84, commencing with January 1, 2017." J.A. 23. That SOW also provided that it "covers Services which will be provided by Agency . . . during the period January 1, 2017 through December 31, 2017," and

---

[2] Deutsch agrees that "The contract year ended on November 7." Appellant's Reply Br. at 11.

did not provide for automatic renewal. *Id.* Therefore, at the end of December 2017, that SOW expired. Under the Contract, SW's obligation to pay ended concurrently. And, as already discussed, paragraph 3(c) did not extend it.

Deutsch further contends that the Contract was terminated in January 2018 when SW refused to continue paying and on this separate basis maintains that SW owes it 90 days' fees. In support of its argument, Deutsch points to this portion of the Contract's termination provision, paragraph 2(a):

> The term of this Agreement ("Term") shall commence on the date hereof and shall continue thereafter until terminated (i) by either party for any or no reason at any time upon ninety (90) days' written notice to the other (the "Notice Period"), provided, however, that all rights and responsibilities of the parties shall continue during the Notice Period, including the provision of Services by Agency and Sherwin-Williams' payment to Agency of the Monthly Fee, as defined below, applicable during the Notice Period (prorated for any partial month, if applicable) . . . .

J.A. 14 ¶ 2(a).[3] Deutsch argues that, under (i), SW must pay 90 days' worth of fees after SW terminated the Contract by ceasing to pay under the fifth SOW. But paragraph 2(a) says only that SW must pay "the Monthly Fee . . . *applicable during the Notice Period.*" *Id.* (emphasis added). Because no SOW was in effect, SW had no continuing payment obligation (since the Contract provided none apart from the SOWs). Therefore, no fee was "applicable" during the first 90 days of 2018. Therefore, even if SW's actions can be considered to have terminated the Contract—a question that we need not and do not answer—it had no continuing obligation to pay Deutsch a fee.

---

[3] The Contract also allows termination of a specific SOW by SW on 60 days' notice:

> Sherwin-Williams also may terminate Statement(s) of Work, in whole or in part, for any or no reason at any time upon sixty (60) days' written notice to Agency, provided, however, that Sherwin-Williams shall pay Agency the Monthly Fee under the Statement of Work until sixty (60) days after the date of such written notice (prorated for any partial month, if applicable).

J.A. 14 ¶ 2(a). We agree with the district court that Deutsch's interpretation—creating a continuing payment obligation—would render this provision superfluous. A 60-day termination provision has no meaning if SW is obligated to nevertheless continue paying past 60 days if a new SOW is not signed.

Deutsch protests the unfairness of its continuing to be bound by the Contract—including, most egregiously, in its view, by a provision specifying that Deutsch cannot provide services to a SW competitor, J.A. 22 ¶ 16—during a period when SW had no continuing payment obligation to Deutsch. But that is what the Contract explicitly contemplates. Deutsch is free, for its own part, to terminate the Contract and relieve itself of those obligations by giving 90 days' notice to SW under paragraph 2(a).

Deutsch and amicus American Association of Advertising Agencies, Inc., proffer course-of-dealing evidence, one of the parties' draft agreements, and evidence of what they consider industry standards for our consideration in resolving what they cast as ambiguities in the Contract.[4] Ohio law does not allow consideration of extrinsic evidence, however, when a contract's terms are unambiguous. *See Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."). Because we conclude that the Contract's terms are unambiguous, we decline to review the proffered extrinsic evidence.

\* \* \*

We have considered all of Deutsch's remaining arguments and conclude that they are without merit. The District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[4] We GRANT the motion of American Association of Advertising Agencies, Inc., to file a brief amicus curiae.