OPINION
{¶ 1} Plaintiff St. Clair-Pavlis, Ltd appeals a summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of defendants Willmoll Development Company, Prudential DeHoff Realtors, Inc. and Robert J. DeHoff. Appellant assigns a single error to the trial court:
 {¶ 2} "I. The trial court erred by granting summary judgment against appellant St. Clair-Pavlis, Ltd."
 {¶ 3} Appellant's statement pursuant to Loc. App. R. 9 asserts the summary judgment was inappropriate because there were genuinely disputed material facts presented in the case.
 {¶ 4} Civ. R. 56 (C) states in pertinent part:
 {¶ 5} Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
 {¶ 6} The Supreme Court has explained the procedure for summary judgments: first, the moving party bears the responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claims, Drescher v. Burt
(1996), 75 Ohio St. 3d 280, 662 N.E. 264. The non-moving party then has a reciprocal burden of setting forth specific facts in the record demonstrating a genuine issue of material fact does exist and must be preserved for trial. The responding party cannot rest on mere allegations or denials in the pleadings. If the nonmoving party does not respond properly, summary judgment, if appropriate, should be entered against the non-moving party, Id. A fact is material if it affects the outcome of the case under the applicable substantive law, Russell v. InterimPersonnel, Inc. (1999), 135 Ohio App. 3d 301, 733 N.E. 2d 1186.
 {¶ 7} In its judgment entry granting the motion for summary judgment, the court set forth the pertinent facts which it found to be undisputed. The action originated when appellant purchased two acres of undeveloped real estate in the Akcan Industrial Park from appellee Willmoll Development Company in March of 2000. Appellee Robert DeHoff is a principal in Willmoll Development Company and appellee Prudential DeHoff Realtors. Appellee Robert DeHoff, through his real estate agency, acted as the real estate agent for the sale. Appellant purchased the property intending to construct a day care center to be leased to a third party.
 {¶ 8} At the start, appellant had been unsure how much acreage it needed, so in 1999, the parties had entered into an open-ended option to purchase the property. In July 1999, appellant began to pay appellees $1,000 per month for the option to purchase the property, and these payments were to be applied to the purchase price of $75,000 per acre. Appellant continued to pay on the option to purchase for eight months, during which time appellant had full access to the property. At some point, appellant hired the engineering firm of Hammontree Associates to conduct a site survey of the property. The site survey relayed information about the property, including, but not limited to, the fact the site contained "sanitary fill" and "made land". Scott St. Clair, appellant's president, gave a deposition wherein he testified he is a commercial contractor and understood the meaning of these terms. Specifically, Scott St. Clair testified "made land" meant something other than Mother Nature's land, and "fill" was not naturally occurring soil, but rather was some "product" that had been put into the soil.
 {¶ 9} Appellant decided to exercise its option to purchase, and the parties set a closing date in March, 2000. According to Scott St. Clair's deposition, on February 21, 2000, he had a telephone conversation with Robert DeHoff regarding the property. During the conversation, Robert DeHoff represented the property was premium property, and to the best of his knowledge, there was nothing wrong it. Appellant asserts based on this conversation, it believed it was receiving premium property with no defects. The trial court noted there was conflicting testimony in Scott St. Clair's deposition because at another point in the deposition, Scott St. Clair testified Robert DeHoff had told him it was a premium price for the piece of property, rather than a premium piece of property.
 {¶ 10} After the parties closed on the purchase, appellant began construction of the daycare facility. On the very first day of construction, appellant was using a trackhoe to prepare the footers and discovered glazed ceramic tile buried about twenty feet from the surface, making the site unsuitable for appellant's building without foundation modifications. Appellant's complaint sought to recover the additional costs it incurred because of these modifications.
 {¶ 11} Appellant's five count complaint alleged fraud and misrepresentation by the appellees, whom, appellant alleged, knew of, but failed to disclose, the condition of the property. The appellees' defense was based on the doctrine of caveat emptor.
 {¶ 12} The trial court correctly stated the doctrine of caveat emptor precludes recovery where the defendant can prove: (1) That the condition complained of is open to observation or discoverable upon reasonable inspection; (2) The purchaser had the unimpeded opportunity to examine the premises; and (3) There is no fraud on the part of the seller, Layman v. Binns (1988),35 Ohio St. 3d 176.
 {¶ 13} The trial court found the condition of the soil was open to observation and discoverable upon reasonable inspection. The court found appellant was on notice the soil at the site contained "man made" sanitary fill. Appellant's agent Hammontree provided a site plan in 1999 which described the soil conditions, and Scott St. Clair testified from this time, he knew there was fill on the site, including "made land".
 {¶ 14} The trial court found Scott St. Clair conceded if property contains fill, the industry standard is to conduct a soil-boring test, which appellant elected not to do here. St. Clair testified had such a test been performed, the glaze tile would have been discovered. Scott St. Clair testified appellee DeHoff invited him to have soil borings done, and the court found it was undisputed appellant had the unimpeded opportunity to examine the property. The court concluded the glazed tile was not a latent defect.
 {¶ 15} The trial court found appellant had not provided the court with evidence of fraud or misrepresentation. The court found no evidence appellees knew glazed tile had been buried on the property but withheld such information from appellant. Robert DeHoff submitted an affidavit to the court wherein he testified to the best of his knowledge, over thirty industrial buildings had been constructed in Akcan Industrial Park and no builder ever encountered buried bricks or glazed tile. Spring Electric and Mohler Construction submitted affidavits indicating they had both been involved in constructing buildings in the Akcan Industrial Park, and to the best of their knowledge no glazed tile or brick waste material was found at any of their building sites.
 {¶ 16} The court concluded appellant had not demonstrated an issue of material fact and therefore appellees were entitled to judgment as a matter of law.
 {¶ 17} Appellants' Loc. App. R. 9 statement lists four factual issues presented in the case. They are: (1) whether appellant presented evidence there were genuine issues of material fact as to whether appellees' defense of caveat emptor precludes appellant's claims; (2) whether the underground soil conditions, the existence of fill, and the fact the property was formerly a lake were not open to observation and were not discoverable upon a reasonable inspection; (3) whether appellees made fraudulent misrepresentations to appellant and committed fraud by failing to disclose material facts about the property; and (4) whether appellants justifiably relied on the fraudulent misrepresentations and fraudulent concealments of the appellees.
 {¶ 18} Appellant urges the record shows appellees were aware the property in question was unsuitable for industrial building sites but nevertheless marketed it for this express purpose. Robert DeHoff was a shareholder and director of Akcan, Inc. from its inception in 1969, until its dissolution in 1986. In 1969, Akcan purchased 370 acres of land to develop into an industrial park. The property had large clay pits and a large change in elevation from east to west. The land had previously been used by National Fireproofing Company, a manufacturer of clay tile. At the time Akcan, Inc. purchased the property, the clay pits were filled with water and looked like ponds. Akcan later permitted coal mining on the property.
 {¶ 19} Akcan developed the property for use as an industrial park by bringing fill into the low-lying areas and draining the lakes. Appellee Robert DeHoff conceded he was fully advised while the fill work was done on the property.
 {¶ 20} In 1995, a company called Quality Poly considered purchasing a parcel of property in the industrial park across the street from the parcel at issue in this case. Quality Poly did a sub-surface investigation of the property and decided not to purchase it. Quality Poly gave a copy of the sub-surface investigation report to Robert DeHoff. The sub-surface investigation report indicated there were objectionable fill materials and organic soils up to 13 feet deep below the existing surface grades, and these materials are not ideal materials to support building foundations.
 {¶ 21} Appellant argues because it had numerous prior dealings with Robert DeHoff, it took him at word when he represented there was nothing wrong with the property.
 {¶ 22} After appellant discovered the glazed ceramic tile, it notified DeHoff the lot appeared to be unbuildable without expensive modifications to the foundation system of the building. Appellant alleges DeHoff asked to be kept abreast of the situation.
 {¶ 23} Appellant then hired Timmerman Geotechnical Group to perform a subsurface investigation of the property. The report indicated there was glazed ceramic tile and also black and brown silt/clay. Appellant sent Robert DeHoff a copy of this investigation report. Eventually, appellant incurred additional costs to re-design the foundation, and then met with Robert DeHoff to seek reimbursement of the additional costs. Appellant alleges because DeHoff had asked to be kept abreast of the situation, appellant believed DeHoff and Willmoll Development were going to accept responsibility for the unsuitable soil conditions.
 {¶ 24} Appellant also alleged after it purchased the property, it discovered aerial photographs of the property taken in 1964. The photographs showed the majority of the property appellant had purchased was covered by a lake. Robert DeHoff testified he knew a portion of the industrial park had at one time consisted of a clay pit filled with water, but he did not know exactly where the pit was, and did not know it extended to appellant's property. DeHoff admitted he never informed anyone there could be a filled clay pit, and did not inform appellant there had once been a glazed tile manufacturer operating in the area.
 {¶ 25} Appellant alleges if it had been aware a portion of the property had been a clay pit, lake, or pond, or had known glazed ceramic tile had been dumped on the property, it would not have purchased the property. Appellant also argues DeHoff never provided a copy of the Quality Poly subsurface investigation to the appellant or inform them Quality Poly had determined the soil was unsuitable for certain uses.
 {¶ 26} Appellant argues the above facts call into question whether the defect of the property was open and obvious. Appellant cites us to several cases wherein courts of appeals have held underground defects are not open to observation or discoverable by reasonable inspection.
 {¶ 27} In Frost v. Bank One (September 28, 1990), Sandusky Appellate No. S-89-32, a buyer purchased real estate located on a filled in creek bed. The seller was aware of this fact and did not put the buyer on notice. The Sixth District Court of Appeals held the seller of an unimproved lot has a duty to disclose the land has been filled if the seller has knowledge of the fill. InBlake v. John Doe (1993), 89 Ohio App. 3d 130, the previous owners of a home knew the house was built on unstable footing and failed to disclose this. The court held unstable soil conditions are latent and should be disclosed.
 {¶ 28} In Baranowski v. Sun He Ha (December 12, 1990), Montgomery Appellate No. 12088, the Court of Appeals for the Second District determined open and obvious cracks in a wall of a home are not defects. It is the poor soil base causing the cracks in the wall that was the true defect in the property, and this was not open and obvious. In Evans v. Baker (March 17, 2000), Ross Appellate No. 99CA502, the Fourth District Court of Appeals reviewed a case where the buyers noticed dampness and condensation, knew the residence was on a hill, and observed a sump pump in the basement. The court found notwithstanding these facts, the buyers did not have sufficient notice of a defect until after they purchased the home and the basement flooded. The Ross County Court of Appeals held a reasonable purchaser is not required to have a professional inspection. In Evans, however, the purchasers prevailed because the sellers had fraudulently misrepresented the condition of the home by repeatedly informing the purchasers there was no problem with the basement.
 {¶ 29} The cases cited by appellant are distinguishable on several points. The transaction here was a commercial transaction by experienced parties, not a sale of residential property. In the above cases the sellers had actual knowledge of a defect in the specific property, not, as here, a general knowledge about the entire tract and other parcels. Here, appellant had information about the nature of the property from Hammontree's report. Appellant argues this information was not highlighted or gave any indication the information was important, but a party cannot disregard a fact in a report and then allege the fact was unknown and undiscoverable, see Morris Novak Realty Company v.Gibbons (May 27, 1993), Cuyahoga App. No. 62654.
 {¶ 30} The trial court found appellant had failed to present evidence in support of its claim of fraud. A finding of fraud would bar application of the doctrine of caveat emptor, Layman,
supra. In Layman, the supreme court cited Traverse v. Long
(1956), 165 Ohio St. 249, 59 O.O.325, 135 N.E.2d 256, wherein the court held caveat emptor may apply even though there are misstatements and misrepresentations by the vendor, if the misstatements and misrepresentations are not so reprehensible in nature as to constitute fraud, Layman at 644, citations deleted.
 {¶ 31} We find the record contains no fraudulent affirmative statements by appellees, but only statements conditioned by cautionary words like "to the best of my knowledge". We agree these representations are not fraudulent as a matter of law.
 {¶ 32} Finally, appellant's complaint contained counts based on R.C. 4735.61 and 4735.67. These statutes codify the duty of a licensed real estate broker to fairly and truthfully disclose information to the purchaser. For the reasons stated supra, these causes of action also fail.
 {¶ 33} We find the trial court did not err in determining the doctrine of caveat emptor applies, and appellant cannot recover for damages due to conditions of the property it could have readily discovered.
 {¶ 34} The assignment of error is overruled.
 {¶ 35} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Gwin, J., Boggins, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.