NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0406n.06
Filed: July 7, 2008

No. 07-3472

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| E-POCH PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TRW AUTOMOTIVE U.S., LLC, | ) | NORTHEN DISTRICT OF OHIO |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before: GUY, SUHRHEINRICH, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant E-Poch Properties ("E-Poch") appeals from a judgment, which (1) partially granted TRW Automotive U.S.'s ("TRW") motion to dismiss, and (2) granted TRW's motion for summary judgment. E-Poch claims that (1) TRW failed to disclose material facts – facts that it was contractually obligated to disclose – regarding the condition of the purchased property's roof; (2) TRW fraudulently and negligently misrepresented the condition of the purchased property's roof; and (3) TRW, by the terms of the purchase agreement, is obligated to continue making payments for the air-monitoring costs at the purchased property. The parties consented to have a magistrate judge exercise jurisdiction over the action pursuant to 28 U.S.C. § 636(c). For the following reasons, we affirm the magistrate judge's various decisions.

-1-

I.

The underlying facts of this case stem from a purchase agreement between E-Poch[1] and TRW under which E-Poch agreed to purchase real estate located in Cleveland, Ohio ("the property") from TRW on or about November 12, 2003. The purchase and sale of the property closed on January 20, 2005. In the "Warranties and Representations of Seller" section of the purchase agreement, TRW agreed that it had "no knowledge of any claims or violation regarding the current condition or use of the Property or any failure of any part thereof to be in compliance with any law, ordinance, statute, regulation or order of governmental authority or insurance underwriter."

In addition, in § 23(d)(iii) of the agreement, TRW agreed to "[c]omplete, at Seller's sole expense, the cleanup of the Property under Ohio's Voluntary Action Program ("VAP") . . . and deliver to Buyer a No Further Action ("NFA") letter from a Certified Professional. Seller agrees to apply for a Covenant Not to Sue ("CNS") from the State of Ohio."

Finally, in an amendment to the real estate purchase agreement, TRW agreed to "complete the following tasks at its sole expense: cleaning of oil and coolant residue from identified surfaces, restoration of restroom plumbing fixtures to operating condition, and repairs and replacements to floor damage . . . ."

On June 6, 2005, E-Poch filed suit against TRW. In its complaint, E-Poch advanced six claims. According to E-Poch's allegations in its complaint:

> TRW Automotive's representations, warranties and covenants made to E-Poch in the Agreement were false and/or not honored in numerous respects, including, but not limited to, the following:

---

[1]Although the original agreement was between HMS2 International, Inc. and TRW, HMS2 International, Inc. assigned its interest under the purchase agreement to E-Poch prior to closing.

(a) prior to closing, TRW Automotive was made aware, both verbally and in writing, of numerous claims from the roofing contractor servicing the Property that the property's roof was plagued by significant problems and defects . . . . In fact, the roofing contractor recommended that TRW Automotive spend in excess of $2.1 million to remedy these conditions, and further claimed to TRW Automotive in writing that certain areas of the roof were "critical and we would be negligent as a professional roofing contractor if we did not make you aware of the potential danger of collapse or your personnel falling through those areas." A proposal provided to E-Poch to remedy these numerous and significant roof problems and defects exceeds $1,028,000.00.

(b) TRW Automotive has failed and refused to pay for utility charges in excess of $80,000 incurred by it in performing Repair Work; and

(c) TRW Automotive has failed and refused to pay for certain long-term air sampling and monitoring, estimated to cost in excess of $58,000, which the Ohio EPA has required as a condition to the issuance of the NFA required as part of the Environmental Work.

Pursuant to Counts I and II of the complaint, E-Poch alleged that TRW made fraudulent misrepresentations that it knew were materially false, specifically misrepresentations regarding the condition of the roof of the property. In these first two claims, E-Poch pursued damages from both the misrepresentation (Count I) and recission of the agreement (Count II). Pursuant to Counts III and IV of the complaint, E-Poch alleged that TRW had negligently misrepresented material facts, again specifically referencing misrepresentations regarding the condition of the roof. E-Poch again sought both damages from the misrepresentations (Count III) and recission of the agreement (Count IV). Finally, pursuant to Counts V and VI of the complaint, E-Poch alleged that TRW had breached its contract by failing and refusing to honor its covenants and warranty obligations. In Count VI, E-Poch referenced specifically TRW's alleged failure to complete the repair work and environmental work required by the agreement. For these breach of contract claims, E-Poch sought both damages

(Count V) and specific performance (Count VI).

TRW subsequently filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Counts I-IV of the indictment. On November 15, 2005, Magistrate Judge Vecchiarelli, pursuant to an agreement of the parties under 28 U.S.C. § 636(c), found that counts I-IV of the complaint survived as far as TRW's claims regarding the disrepair of the roof; however, these claims were dismissed as they related to misrepresentations regarding the utility charges and air sampling. In addition, the magistrate judge also dismissed any breach of contract claims regarding the condition of the roof because she concluded that E-Poch had failed to demonstrate that TRW had any contractual obligation to disclose any problems with the roof.

E-Poch then moved to amend its complaint. However, the magistrate judge denied the motion, concluding that the motion to amend the complaint was unduly delayed, would be futile, and would prejudice TRW.

TRW then filed a motion for summary judgment, arguing, *inter alia*, that the doctrine of *caveat emptor* barred E-Poch's fraudulent and negligent misrepresentation claims. The magistrate judge denied TRW's motion for summary judgment as it pertained to the fraudulent and negligent misrepresentation claims; however, she granted the motion as it related to the utility charges that were not related to the clean up, restoration, and repair work. In addition, the magistrate judge granted TRW's motion for summary judgment for the breach of contract claims as they pertained to the air monitoring costs incurred by E-Poch.

Not satisfied, TRW filed a motion for partial reconsideration of summary judgment, arguing that E-Poch had unreasonably relied upon its alleged misrepresentations. On March 2, 2007, the magistrate judge granted TRW's motion and dismissed the fraudulent and negligent

-4-

misrepresentation claims (Counts I-IV). The magistrate judge did, however, allow the remaining claim – TRW's alleged failure to pay utility charges incurred as a result of the clean-up, repair, and restoration activities – to proceed to trial.[2]

E-Poch now appeals the magistrate judge's partial grant of TRW's motion to dismiss as it pertains to the air-monitoring charges and the partial grant of TRW's motion for summary judgment.

## II.

"We review the district court's grant of summary judgment de novo, employing the same legal standard applied by the district court." *Std. Constr. Co. v. Md. Cas. Co.*, 359 F.3d 846, 849 (6th Cir. 2004) (citation omitted) (applying the summary judgment standard to the decision of a magistrate judge acting pursuant to 28 U.S.C. § 636(c)). "The same standard applies where the district court denies summary judgment based upon purely legal grounds. The district court's findings of fact are reviewed under the clearly erroneous standard." *Id.* (internal citation omitted). Accordingly, we review the district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo. See Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (applying the motion to dismiss standard to the decision of a magistrate judge acting pursuant to 28 U.S.C. § 636(c)).

In addition, the terms of the purchase agreement state that it is governed by and is to be construed in accordance with Ohio law.

## III.

E-Poch claims that TRW breached its contract by not fulfilling its obligations pursuant to § 8(f) of the agreement, which states in the "Warranties and Representations of Seller" section as

---

[2]This remaining claim was later voluntarily dismissed without prejudice.

follows:

> [TRW has] no knowledge of any claims or violation regarding the current condition or use of the Property or any failure of any part thereof to be in compliance with any law, ordinance, statute, regulation or order of governmental authority or insurance underwriter.

According to E-Poch, TRW breached its obligations under this section of the agreement by failing to disclose evaluations of the roof conducted by Roberts Roofing.

First, we cannot consider the failure to disclose an evaluation of the roof a failure to disclose a "claim." It is a long-standing principle of Ohio law that "[i]n interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning." *Carroll Weir Funeral Home v. Miller*, 207 N.E.2d 747, 749 (Ohio 1965) (citing *Morgan v. Boyer*, 39 Ohio St. 324, syllabus (1883)). Although E-Poch argues that this court should adopt a definition of "claims" that includes "a statement of something as a fact; an assertion," both the plain meaning of the word and its context in the agreement counsel otherwise. Given the contractual context of the word, it seems clear that the use of the word "claim" was intended to take on its more legal definition, which involves the assertion of some sort of right, title, privilege, or entitlement. *See* Black's Law Dictionary 264 (8th ed. 2004) (defining claim, *inter alia*, as "[a] demand for money, property, or a legal remedy to which one asserts a right"). Reading the word "claim" in such a way would fit within the context of § 8(f) of the agreement, which was concerned with "any claims or violation . . . or any failure to be in compliance with any law, ordinance, statute, regulation or order of governmental authority or insurance underwriter." To read "claim" as a mere assertion of fact would seemingly take the word out of the meaning which appears to have been intended by the parties. *Cf. Foster Wheeler Enviresponse v. Franklin County Convention Facilities Auth.*, 678

N.E.2d 519, 526 (Ohio 1997) ("The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties."). Thus, as the magistrate judge correctly ruled, § 8(f) cannot give rise to a contractual duty on the part of TRW; in turn, the magistrate judge correctly dismissed any breach of contract claim premised on TRW's failure to disclose the Roberts Roofing report.[3]

IV.

The magistrate judge concluded that E-Poch's misrepresentation claims were barred by the doctrine of *caveat emptor*. More specifically, she concluded that "no reasonable juror could find that E-Poch justifiably relied on [the] alleged misrepresentations. As such, E-Poch cannot maintain its fraudulent or negligent misrepresentation claims and the application of *caveat emptor* is appropriate."

According to the Ohio Supreme Court, "the doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained

---

[3]E-Poch also argues that TRW breached its contractual duties under § 8(f) of the agreement by failing an inspection of the Building and Housing Department of the City of Cleveland. As E-Poch notes, TRW received a Notice of Violation for the defective condition of the roof on March 8, 2005, less than two months after the purchase closed. E-Poch raised this issue in the district court only in its motion to amend the complaint, after the grant of TRW's motion to dismiss. Without addressing the merits of this claim, we conclude that it has been waived: "[G]enerally . . . an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Moreover, "[w]hile we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses." *Id*. at 553 (collecting cases). Furthermore, although it is true that this court "on occasion, [has] deviated from the general rule in 'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice,'" *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (quoting *Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)), this court has also explained these conditions are not satisfied "unless reaching that issue serves an over-arching purpose beyond that of arriving at the correct result in an individual case." *Id*. at 408. No such circumstances exist in the present case.

of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the full and unimpeded opportunity to examine the premises, and (3) there is no evidence of fraud on the part of the vendor." *Layman v. Binns*, 519 N.E.2d 642, 645 (Ohio 1988). However, under Ohio law, "[t]he doctrine of caveat emptor is nullified by a fraudulent misrepresentation or fraudulent failure to disclose." *Lapos Constr., Inc. v. Leslie*, 2006 Ohio 5812, ¶ 14 (Ohio Ct. App. 2006).

As a general rule,

> to sustain an action for fraud against Appellee, Appellant must establish all of the following: "1) a representation, or in a situation where there was a duty to disclose, a concealment of fact; 2) which fact is material to the transaction; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying upon it; 5) justifiable reliance on the misrepresentation; and 6) a resulting injury proximately caused by the reliance.

*Id*. at P15 (quoting *Garvey v. Clevidence*, 2004 Ohio 6536, ¶ 12 (Ohio Ct. App. 2004)). The parties dispute (1) whether the condition of the roof was open or discoverable upon reasonable inspection and (2) whether E-Poch justifiably relied upon TRW's alleged misrepresentations.

### a. Open to Observation or Discoverable Upon Reasonable Inspection

Under Ohio law, "[t]he principle of *caveat emptor* applies to sales of real estate relative to conditions open to observation. Where those conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the vendor, the purchaser has no just cause for complaint even though there are misstatements and misrepresentations by the vendor not so reprehensible in nature as to constitute fraud." *Kearns v. Huckaby*, 2006 Ohio 5196, ¶ 17 (Ohio Ct. App. 2006) (citing *Traverse v. Long*, 135 N.E.2d 256, 259 (1956)). The standard for determining when a defect is open to observation "is ultimately whether the facts were such that a reasonably prudent person would be put on notice of a possible problem."

*Barna v. Paris*, 2000 Ohio App. LEXIS 4555, at \*9 (Ohio Ct. App. Sept. 29, 2000) (citing *Tipton v. Nuzum*, 84 Ohio App. 3d 33, 38 (Ohio Ct. App. 1992)). Thus, "a party cannot disregard a fact in a report and then allege the fact was unknown and undiscoverable." *St. Clair-Pavlis, Ltd v. Willmoll Dev. Co.*, 2005 Ohio 3124, ¶ 29 (Ohio Ct. App. 2005) (finding that the defects were discoverable because the "appellant had information about the nature of the property from [the] report" and despite the fact that the "information [in the report] was [neither] highlighted [nor did the defendants] g[i]ve any indication the information was important"); *see also Sexton v. Wiley*, 2005 Ohio 2269, ¶ 22 (Ohio Ct. App. 2005) ("A review of the record indicates that all of the defects of which appellant complains were open to observation or discoverable upon reasonable inspection; in fact, it appears that most or all of the defects were discovered and reported to appellant on inspection reports. Further, the record contains no evidence indicating that appellant did not have an unimpeded opportunity to examine the property for defects.").

Given the undisputed evidence in the record, had E-Poch acted in a reasonably prudent fashion, it would have discovered the extent of the damage to the roof. The roof on the property was inspected by three sets of roofing professionals: (1) Roberts Roofing, (2) Technique Roofing Systems ("Technique"), and (3) Construction Resources. The opinions of all three companies factor into a determination of whether the defects of the roof were open to observation or discoverable upon reasonable inspection.

In a letter dated April 19, 2000, Robert Fahlman, president of Roberts Roofing, informed Tom Bozich, the TRW facilities manager at the property, that based on an inspection of the roof, certain sections of the roof were in "critical" need of repair. He also made some suggestions on how to address some of these more critical needs, specifically quoting a price to tear off and replace thirty

percent of the roof. Both Kurt Timmons, manager of Technique, and Bozich stated during their respective depositions that these records were available for review during the subsequent Technique inspection, conducted at the request of E-Poch representatives.

In addition, Timmons stated in his deposition that the weather conditions during his December 2003 inspection of the property did not in any way impede his ability to inspect the premises.[4] Furthermore, Timmons also stated that he did not believe any TRW employees tried to cover up any of the defects in the roof or move him away from problematic areas of the roof. Pursuant to his inspection of the property in December of 2003, Timmons sent a letter dated January 14, 2004 to Jamie Melvin, one of E-Poch's principals, stating that maintaining the roof would require two types of expenditures: (1) general maintenance costs and (2) roof replacement costs. Moreover, Timmons noted that prolonging replacement would increase replacement costs. Finally, although somewhat ambiguous from the text of the letter, Timmons explained at his deposition that it would have been clear to E-Poch representatives that both the replacement and maintenance costs would

---

[4]Moreover, it would seem bad weather does not typically affect the open to observation analysis. As the Ohio Court of Appeals explained in *Kearns*,

> To begin, the condition of the roof was open to observation. Other than snow, which appellants admit did not cover the entire roof, nothing in the record indicates appellants lacked the opportunity to observe and discover the composition of the roof. Furthermore, appellants had the unimpeded opportunity to examine the premises. The purchase contract gave appellants the option to fully inspect the premises; they exercised that option personally by conducting two inspections, and by having Huckaby conduct a full-house inspection. Appellants do not contend that their inspections were impeded in any way, and there is no evidence in the record of any complaints regarding access to the premises.

*Kearns v. Huckaby*, 2006 Ohio 5196, ¶ 20 (Ohio Ct. App. 2006).

have been necessary annual expenditures.[5] Together, these facts make it clear that the condition of the roof was open to observation and, moreover, a reasonably prudent person would have engaged in further investigation.

In response, E-Poch submits the affidavit of Bud Griffith of Construction Resources, which states that "[i]n order to determine the true nature and extent of the deteriorated roof conditions, it is necessary to do some destructive testing and analysis, such as the roof cores performed by Construction Resources as part of its study . . . , and to tear off the roof to determine how much rotted decking needs to be replaced." However, despite his statements on what would be necessary to discover the "true nature" of the deterioration, the following exchange took place at Griffith's deposition:

Q: Is it possible to determine whether a roof or portion of a roof needs to be replaced without doing destructive core testing?

A: To a trained industry expert it's possible.

Thus Griffith's complete testimony simply does not undermine the conclusion that had E-Poch exercised reasonable prudence, it would have discovered the true extent of the deterioration of the roof. In turn, the magistrate judge did not err in concluding that the condition of the roof was open to observation.[6]

---

[5]E-Poch argues that it understood the Technique evaluation to only recommend a one-time replacement and not an annual cost for replacement. Therefore, E-Poch thought that the roof was in reasonable shape in line with the representations allegedly made by TRW. However, the fact that E-Poch did not bother to consult further with Technique regarding the meaning of the report severely blunts the importance of this misunderstanding; indeed, one would have expected a reasonably prudent individual to follow up with the entity inspecting a property for purchase.

[6]E-Poch also emphasizes that the alleged misrepresentations by TRW led it to believe that further inspection was not necessary. However, the extent of the damage actually uncovered by the Techinque inspection, combined with the testimony of the visible defects in the roof, is too

**b.      Justifiable Reliance**

E-Poch claims that TRW misrepresented the deteriorated state of the roof by stating that the roof only had minor leaks and did not require significant repair work.  Furthermore, TRW failed to bring the Roberts Roofing reports to E-Poch's attention.  Finally, E-Poch submitted the affidavit of Tim Seale who stated that, as an employee of TRW, he was instructed by Bozich to make sure that there were no puddles on the floor from leaks in the roof when prospective buyers were touring the facility.  In addition, Seale was told not to say anything to prospective buyers about the conditions of the roof.

Taking these facts in the light most favorable to E-Poch, it would seem that TRW did make material misrepresentations to E-Poch.  However, as noted above, in order to make out a claim for fraudulent misrepresentation, E-Poch must also demonstrate that it justifiably relied on these misrepresentations.  Even construing the facts in a light most favorable to E-Poch, E-Poch cannot make such a showing.

Prior to the closing, E-Poch neither spoke with Roberts Roofing, despite the fact that it was aware that Roberts Roofing was the entity that had done the maintenance on the roof for TRW, nor did E-Poch follow up by contacting Technique regarding the inspection it conducted, despite some admitted ambiguities in the inspection report Technique provided E-Poch.  These facts, combined with the fact that TRW made the files containing the Roberts Roofing reports available to TRW, and that the Technique inspection indicated some potentially serious problems with the roof, lead us to

---

significant to allow E-Poch to claim that it was not reasonably prudent to conduct further investigation.

conclude that E-Poch did not justifiably rely on the alleged misrepresentations of TRW.[7] As a result, because the reliance was not justified, E-Poch cannot make out its claim for fraudulent misrepresentation.

V.

Pursuant to § 23(d)(iii), TRW agreed to "[c]omplete, at seller's sole expense, the cleanup of the Property under Ohio's Voluntary Action Program ("VAP") . . . and deliver to [E-Poch] a No Further Action ("NFA") letter from a Certified Professional. [TRW] agrees to apply for a Covenant Not To Sue ("CNS") from the State of Ohio." E-Poch argues that this subsection of the agreement was intended to include future air-monitoring costs, which are necessary to remain in compliance with Ohio's VAP. Such a conclusion contradicts the plain meaning of the purchase agreement.

Under Ohio law, "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.*, 374 N.E.2d 146, 150 (Ohio 1978). In addition, "where the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in

---

[7]E-Poch's citations to *Brewer v. Brothers*, 611 N.E.2d 492 (Ohio Ct. App. 1992), and *Ward v. Kaminsky*, 1998 Ohio App. LEXIS 485 (Ohio Ct. App. Feb. 12, 1998) are inapposite. First, in *Brewer*, the court found that the defects were not open to observation. *Brewer*, 611 N.E.2d at 495. Second, in *Brewer*, the court held that, despite a clause that required the buyer to inspect the premises, the buyer could still pursue a claim for fraudulent misrepresentation. *Id*. This holding does not shed light on when it is justifiable to rely on a particular misrepresentation, which is our current inquiry. In *Ward*, the court addressed a jury's finding that the seller had fraudulently misrepresented the condition of his property. *Ward*, 1998 Ohio App. LEXIS 485, at *7-10. In doing so, the court merely found that there was sufficient evidence for the jury to conclude that there had been a misrepresentation; however, the court's opinion gives little aid in determining when a misrepresentation is justifiably relied upon. *Id.* at *9 (concluding that "plaintiffs presented 'some competent and credible evidence' of fraud").

-13-

the clear language employed by the parties." *Id*.

As already noted, § 23(d)(iii) requires TRW to clean up the property under Ohio's VAP and to *apply* for a CNS.[8]  E-Poch does not contest that TRW applied for a CNS; E-Poch, however, believes that because as part of the CNS it must continue to engage in air-monitoring, TRW should bear the costs of that air-monitoring.  But the continued air-monitoring can neither be construed to be part of the "cleanup of the property under Ohio's [VAP]," nor is it part of the application process for the CNS.  Thus, notwithstanding E-Poch's claim that the parties intended for these types of charges to be subsumed under § 23(d)(iii) of the agreement, the plain and ordinary meaning of the purchase agreement requires a contrary conclusion; indeed, to adopt E-Poch's reading of the purchase agreement would be to "create a new contract by finding an intent not expressed in the clear language employed by the parties." *See Alexander*, 374 N.E.2d at 150.[9]

## VI.

For the foregoing reasons, we affirm the decisions of the magistrate judge.

---

[8]E-Poch does not claim that TRW did not deliver an NFA.

[9]Because the plain meaning of the contract does not bear out E-Poch's claims, we need not address TRW's additional defense that this claim is not ripe.