[Cite as *Rodgers v. Sipes*, 2012-Ohio-3070.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY


GRANT RODGERS, ET AL.

    PLAINTIFFS-APPELLANTS,             CASE NO. 3-11-19

    v.

DAVID M. SIPES,                    O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Crawford County Common Pleas Court
Trial Court No. 10-CV-0041

Judgment Affirmed

Date of Decision: July 2, 2012


APPEARANCES:

    *Shane M. Leuthold* for Appellants

    *Clifford J. Murphy* for Appellee

**SHAW, P.J.**

{¶1} Plaintiff-appellants Grant Rodgers and Deidre M. Rodgers (collectively "the Rodgers") appeal the October 18, 2011 judgment of the Common Pleas Court of Crawford County, Ohio in favor of defendant-appellee David M. Sipes ("Sipes") following a bench trial on claims of fraudulent misrepresentation, fraudulent concealment and breach of contract.

{¶2} In 2001 Sipes and his wife signed a contract with Nigh Builders for the construction of a residence at 5651 Lincoln Highway in Bucyrus, Ohio. In the years after the home was completed, Sipes and his wife spent part of the year living at the property in Ohio and the other part of the year living in Florida. While they stayed in Florida, various friends, relatives and neighbors would check on the residence in their absence.

{¶3} When Sipes' wife died in 2006, he decided to sell the property in Bucyrus. In preparing to sell the house, Sipes retained the services of a realtor, Jerry Holden of Haring Realty, Inc. As part of the process of selling a home, pursuant to R.C. 5302.30, Sipes filled out a Residential Property Disclosure Form ("disclosure form"). On the disclosure form, Sipes checked that he did not know of any current problems with the basement.

{¶4} The Rodgers, who were residing in California, heard that Sipes' property was for sale through some friends that lived in the area. The Rodgers had

planned to relocate to Ohio for Grant Rodgers' work. While Deidre Rodgers was in Ohio, she made an appointment to look at Sipes' property.

{¶5} On September 6, 2006, Deidre Rodgers toured Sipes' property. At that time, Deidre, the realtor and Sipes were the only people present. After touring the property, Deidre called her husband Grant and the Rodgers decided to purchase Sipes' property. The same day that Deidre Rodgers toured the home, she signed a real estate purchase agreement (hereinafter "purchase agreement") which included, *inter alia*, a contingency that the Rodgers be able to sell their home. The purchase agreement also contained language that the property was "being purchased in its present physical condition after examination and inspection by [the Rodgers]," and that the Rodgers would take the property "as is" should the Rodgers not notify Sipes within 5 days after the expiration of a repair period for defects.[1] (Pl.'s Ex. 1); (Def.'s Ex. D).

---

[1] The clause containing this information reads as follows:

> 15. Right to Cancel: If Seller is unwilling or unable to repair any defect or to provide the assurances described above during the repair period, Purchaser shall have the right at the Purchaser's sole option, to cancel this contract, in which event the earnest money shall be handled as provided in Section 3 of this contract, and the parties shall be released from all other obligations. This right of cancellation shall be exercised, if at all, by giving written notice to Seller within 5 days after the expiration of the repair period.
>
> Failure by Purchaser to cancel this contract within such 5-day period shall constitute a waiver by Purchaser of any uncured defects, and Purchaser shall take the property "*as is*" with respect to such defects. (Emphasis added) (Pl.'s Ex. 1); (Def.'s Ex. D).

**{¶6}** Attached and incorporated into the purchase agreement was the disclosure form that had been filled out by Sipes stating, among other things, that Sipes knew of no problems with the basement. The disclosure form also stated in capital letters that it was not a warranty or a substitute for an inspection, and encouraged the Rodgers to obtain a home inspection.

**{¶7}** Prior to closing, the Rodgers had the realtor, who was acting in a dual-agency capacity, recommend a home inspector. The realtor recommended F. Michael Demeter ("Demeter"), dba of National Property Inspections. On October 19, 2006 Demeter conducted a pre-purchase home inspection with Grant Rodgers and Sipes both present. Although Demeter did not inspect the roof as it was raining that day, neither Demeter nor Grant Rodgers was in any way restricted by Sipes from examining any part of the home or property.

**{¶8}** During Demeter's inspection, Sipes informed Grant Rodgers that the sump pump had failed in 2004 causing the basement to flood. Sipes told Grant Rodgers that was the only time Sipes had experienced any water in the basement. Both Grant and Deidre said the basement was important to them because Grant intended to make it his home office.

**{¶9}** Demeter spent approximately 2-2.5 hours on the property. After Demeter finished the inspection he produced a 22 page report and issued a limited

home warranty to the Rodgers.[2] In the report, under Grading/Drainage, Demeter mentioned having observed various positive degrees of slope running toward the home. (Def.'s Ex. B). He suggested "building up level of earth at any low spots" and "monitor[ing] ground water runoff."[3] *Id.* Demeter also noted that there was a battery backup for the sump pump, saying "[i]t is this inspector's experience that, when battery back-up (sic) is present, it is because of the owner's past experiencing a flooded basement due to a power outage." *Id.* at 13. In Demeter's report, he further marked that the sump pump in the basement was in "acceptable" condition.[4] *Id.* at 12.

{¶10} Ultimately the Rodgers purchased Sipes' property for a total of $305,000. On or around November 16, 2006, the Rodgers took possession of the property, and on November 17, 2006 the deed was transferred by Sipes. After purchasing the property, the Rodgers had a 40' by 50' pole barn built approximately thirty feet away from the home. The Rodgers also added an overhang to the porch of the home in which six inch by six inch support posts were sunk into the ground to support the overlay. The construction of these structures was completed in December of 2006.

---

[2] The warranty only covered an enumerated list of issues, only up to the amount of $2500, and only after a deductible was paid. Issuing the limited home warranty appears to be standard practice for this company for anyone that has an inspection done.

[3] In the report, Demeter checked the boxes for both "Monitor Condition" and "Recommend Repairs."

[4] The report defines acceptable as "[t]he item/system was performing its intended function at the time of inspection." (Def.'s Ex. B at 5).

{¶11} On January 5, 2007, for the first time the Rodgers noticed water in the basement, leaking through the walls, draining into a floor drain located in the middle of the basement floor. According to Grant Rodgers, this problem continued whenever there was a heavy rain. Grant Rodgers said there was water in the basement 10-12 times per year and that it remained in the basement for 3-4 days each time. (Tr. at 138). The Rodgers testified that the water created a "rotten egg" smell throughout the house, presumably from sulfur in the water. (Tr. at 128).

{¶12} On January 25, 2010, the Rodgers filed a complaint in the Court of Common Pleas of Crawford County against Sipes alleging fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, negligent nondisclosure and breach of contract.

{¶13} On July 29, 2011 Sipes filed a motion for summary judgment. On August 29, 2011 Sipes' motion for summary judgment was denied. The case proceeded to a bench trial September 13-14, 2011.

{¶14} At trial, the Rodgers called Daniel Marinucci ("Marinucci"), an architectural engineer, to testify as an expert witness. Marinucci testified that he inspected the house and "based upon [his] education, [his] training, [his] experience in the field of architectural engineering, construction, [and] residential inspection" it was his opinion to a reasonable degree of certainty that the water

removal system in the basement had been incorrectly designed and installed causing water to seep through the walls. (Tr. at 35). Marinucci further testified that the sump pump should have had another drainage pipe and as a result, it was overworked and running constantly. Marinucci testified that he believed Sipes knew about the problem. He also testified that the construction of the pole barn and the overhang would have no effect on the basement drainage. Marinucci gave the Rodgers an estimated cost of $61,035.00 to fix the problem and install the needed dewatering system. (Pl.'s Ex. 10).[5]

{¶15} Both Grant and Deidre Rodgers testified at trial about the water problem in the basement. Grant testified that the first time he noticed water seeping in through the walls in the basement it followed a stain pattern on the floor. Grant testified that Sipes had told him prior to closing that stains on the floor were from the carpet being glued to the floor before it was removed. Deidre Rodgers testified that the smell from the water permeated the house to such a degree that she found it impossible to entertain company. The Rodgers both testified that they noticed no water leaking into the basement before January 5, 2007.

{¶16} After Marinucci and both of the Rodgers testified, the Rodgers rested their case. At the close of their case, the Rodgers dismissed their claims for

---

[5] Marinucci conducted his inspection in November of 2009. Marinucci testified that his estimate could now be low and that the price could be substantially more at the time of trial as the cost of the materials had gone up.

negligent misrepresentation and negligent nondisclosure, leaving their claims of fraudulent misrepresentation, fraudulent nondisclosure, and breach of contract to be adjudicated.

{¶17} In his case-in-chief, Sipes testified and called several witnesses who had been in, or worked on, the basement. The witnesses were consistent in testifying that they only were aware of water being in the basement on the one occasion that the sump pump failed and had never seen water in the basement otherwise. At the close of Sipes' case, the parties submitted written closing arguments.

{¶18} On October 18, 2011, the trial court filed its judgment entry finding that the Rodgers had "failed to prove any fraud or any other cause of action that would negate the clear terms of [the] contract." (Doc. No. 26). Accordingly, the trial court entered judgment in favor of Sipes and against the Rodgers on all claims and dismissed their complaint.

{¶19} It is from this judgment that the Rodgers appeal, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR I**

**THE COURT ERRED WHEN IT HELD THAT APPELLANT'S CLAIM WAS BARRED BY THE DOCTRINE OF CAVEAT EMPTOR**

**ASSIGNMENT OF ERROR II**

**THE COURT ERRED WHEN IT HELD THAT APPELLANT'S (SIC) FAILED TO PROVE ANY FRAUD OR ANY OTHER CAUSE OF ACTION THAT WOULD NEGATE THE CLEAR TERMS OF THE CONTRACT WITH APPELLEE.**

{¶20} In the interest of clarity, we elect to address the assignments of error out of order.

*Second Assignment of Error*

{¶21} In the Rodgers' second assignment of error they claim that the trial court erred in failing to find that the Rodgers proved fraud. Specifically the Rodgers argue fraudulent misrepresentation and fraudulent concealment were shown by a floor stain that mirrored the drainage pattern of water that had leaked into the basement, which Sipes claimed came from carpet glue, and that Sipes misrepresented this by stating on the disclosure form that he knew of no problems with the basement. The Rodgers also claim that fraud was evident through the fact that shelves were built in the basement apparently to keep things up off the floor, through the fact that Sipes had previously had the sump pump fixed, and through the fact that the Rodgers' expert opined that the drainage system in the house had been defectively designed and improperly installed.

{¶22} In order to prove fraudulent misrepresentation, the Rodgers had to establish: (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with

knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Melenick v. Mcmanamon*, 8th Dist., Nos. 92453, 92675, 2010-Ohio-1051, ¶ 25, citing *Cardi v. Gump*, 8th Dist. No. 71278, 121 Ohio App.3d 16, 22 (1997)

{¶23} In order to prevail upon a claim of fraudulent concealment, the Rodgers had to establish: (1) actual concealment of a material fact; (2) with knowledge of the fact concealed; (3) and intent to mislead another into relying upon such conduct; (4) followed by actual reliance thereon by such other person having the right to so rely; (5) and with injury resulting to such person because of such reliance. *Thaler v. Zorvko*, 11th Dist. No. 2008-L-091, 2008-Ohio-6881, ¶ 39, quoting *Masso v. Genco*, 11th Dist. No. 89-L-14-162 (1999).

{¶24} "The elements of fraud must be established by clear and convincing evidence. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Rapport v. Kochovski*, 5th Dist. No. 2009CA00055, 2009-Ohio-6880, ¶ 15, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954). "The burden to prove fraud rests upon the party alleging the fraud." *Id.*

citing *First Discount Corp. v. Daken*, 75 Ohio App. 33 (1st Dist.1944), paragraph seven of the syllabus.

{¶25} Where there is conflicting evidence, an appellate court will not substitute its own judgment for the trier-of-fact. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77 (1984). Moreover, if there is sufficient evidence in the record upon which the trial court could properly conclude that the Rodgers were unable to prove their case by clear and convincing evidence, the trial court's judgment will not be reversed as being against the manifest weight of the evidence. *Cross v. Ledford*, 161 Ohio St. 469 (1954).

{¶26} Although the Rodgers had some evidence which, if not contradicted, could have potentially established a prima facie case against Sipes, the record demonstrates that several of the elements of each fraud action are not proven by clear and convincing evidence. First and foremost, testimony at trial casts doubt as to whether the leakage problem even originated during Sipes' ownership of the home. Immediately upon moving onto the property in Bucyrus, the Rodgers had a 40' by 50' pole barn built approximately thirty feet from the house. The Rodgers also had an overhang added to their porch which required six inch by six inch posts to be placed into the ground for support. During the construction of these improvements, a pipe was crushed causing drainage water to flow back into the basement. (Tr. at 132). Though this problem was fixed, and the Rodgers' expert

witness testified that the new structures were not the cause of water leaking in the basement, Bob Nigh, one of the builders of Sipes' home, testified on behalf of Sipes that the new structures could have increased runoff into the basement. (Tr. at 214).

{¶27} Second, even assuming the new structures were not the cause of the leakage in the basement, the record neither clearly demonstrates that Sipes had knowledge that there was a problem with water leaking into the basement nor demonstrates that Sipes recklessly disregarded any such leak. Sipes disclosed to the Rodgers that the sump pump had once failed and a few inches of water filled the basement. After the sump pump failed Sipes had it fixed and had his basement drainage inspected to make sure there were no other problems. John Miller of Rick's Sewer Service inspected the drainage system for Sipes after the pump failed in 2004 and found, contrary to the Rogers' expert's opinion, that there was an exterior drainage system that was properly installed and that it was properly functioning. (Tr. at 247).

{¶28} The Rodgers also failed to demonstrate that at any time between the sump pump failing in 2004 and their discovery of water in the basement on January 5, 2007 that there had even been water in the basement leaking through the walls. To prove that there had been, they rely on floor stains and testimony by their expert witness that there must have been a problem and that Sipes must have

known.  However, none of the other people that had been in or worked on the basement who testified at trial had noticed any water problems in the basement. Scott Stair and David Sipes, Jr. (Sipes son), both testified that they had been in the basement many times and had never seen any water other than on the one occasion when the sump pump failed.  (Tr. at 272, 290).  Stair, who water-proofed basements for a living and occasionally checked on the property, never noticed any problems with the basement and testified that the sump pump was adequate. (Tr. at 272-74).

{¶29} Although the Rodgers have evidence that there was a stain on the floor on the date of January 5, 2007 that evidence hardly gives rise to an inference proving clearly and convincingly that Sipes must have known about a leakage problem in the basement.  This is especially true when Sipes put on the testimony of several people who had been in the basement and had only seen water on the one occasion.  Based upon all of this evidence, the trial court, acting as trier of fact, could reasonably find that Sipes did not know of a problem, conceal a problem, or intend to mislead the Rodgers regarding a problem in purchasing his home.

{¶30} Moreover, even assuming *arguendo* that Sipes did know of a problem, conceal that problem, and even had the intent to mislead the Rodgers regarding that problem in the purchase of his home, the Rodgers are *still* unable to

demonstrate justifiable reliance on Sipes' representations. As part of the purchase agreement there was a statement saying

> **7. Purchaser acknowledges that, except as otherwise herein noted, the real estate/property is being purchased in its present physical condition after examination and inspection by Purchaser. Purchaser further acknowledges that Purchaser(s) are relying solely upon such examination and inspection with reference to condition, value, character, and dimensions of property, improvements, component systems and fixtures. Purchaser acknowledges that neither Seller, nor Seller's Agent(s) have made any representations or warranties upon which Purchaser has been induced to rely; rather Seller and Seller's Agent(s) have encouraged Purchaser to conduct a thorough and independent inspection(s) of the premises.**

(Pl.'s Ex. 1); (Def.'s Ex. D).

{¶31} As noted earlier, the Rodgers did, in fact, obtain a professional inspection. As the Rodgers did not know anyone in the area, they had the realtor, who was acting in a dual-agency capacity, recommend an inspector. Sipes took no part in deciding who the inspector would be. The Rodgers were free to select anyone they wanted and they chose Demeter. Though the Rodgers put on some testimony that they were dissatisfied with Demeter's inspection and his credentials, they did not join Demeter in the lawsuit or call him as a witness.

{¶32} Demeter conducted his inspection while Grant Rodgers was present. While Demeter was conducting his inspection of the property, he was in no way restricted from any area. The Rodgers were similarly not restricted from

inspecting any area of the home or the property. Notably, neither Demeter nor Grant Rodgers noticed any stains on the basement floor during the inspection.

{¶33} Furthermore, in Demeter's report from the inspection, he recommended monitoring the runoff situation in the yard as there were some positive slopes toward the house, and he further recommended that that the areas be filled in. This should have put the Rodgers on notice that drainage could be an issue. There is nothing in the record establishing whether the Rodgers ever followed Demeter's advice. There is also nothing in the record to indicate that the Rodgers asked Sipes to correct this problem or that he failed to comply with such a request.

{¶34} After Demeter's inspection, the Rodgers decided to continue with the purchase of the home. The fact that the Rodgers engaged Demeter to inspect the home shows that they were not relying merely on any statement made in the disclosure form. It is also far from clear in the record that any such reliance would have been justifiable. The language in the purchase agreement itself discounts this possibility.

{¶35} In sum, when viewing the evidence as a whole, there are several elements of both fraud actions that the court, acting as trier of fact during this bench trial, could find were not proven by clear and convincing evidence.[6]

---

[6] In fact, the court found that the Rodgers "fail[ed] to establish any of these claims by a preponderance of the evidence and that judgment in favor of the Defendant must be entered on all claims." (Doc. No. 26).

{¶36} Accordingly, the Rodgers' second assignment of error is overruled.

*First Assignment of Error*

{¶37} In the Rodgers' first assignment of error, they allege that the trial court erred in applying the doctrine of caveat emptor to their case. Specifically the Rodgers claim that the defect in the basement was not readily discoverable and that Sipes committed fraud. The Rodgers claim that these facts preclude the application of caveat emptor to their case. However, having determined that there was no error in the trial court's decision that there was no fraud in this case, we examine this assignment of error only as it pertains to the claim for breach of contract.

{¶38} In Ohio, the seller of real property must disclose substantial latent defects to the purchaser. *Melenick v. Mcmanamon*, 8th Dist., Nos. 92453, 92675, 2010-Ohio-1051, ¶ 24, citing *McClintock v. Fluellen*, 8th Dist. No. 82795, 2004-Ohio-58, ¶ 16. Ohio's real property disclosure statute, R.C. 5302.30, requires sellers of real estate to disclose patent or latent defects within their actual knowledge on a residential property disclosure form. If the seller fails to disclose a material fact on the form with the intention of misleading the buyer, and the

---

We note that while preponderance of the evidence is the correct standard for determining the breach of contract claim, it is not the correct standard for the fraudulent misrepresentation and fraudulent concealment claims. The party alleging fraud has to prove fraud by clear and convincing evidence. *See Rapport v. Kochovski*, 5th Dist. No. 2009CA00055, 2009-Ohio-6880, ¶ 15, citing *Cross v. Ledford*, 161 Ohio St. 469. However, as the Rodgers were unable to meet the even lower threshold of proof of a preponderance of the evidence, it is obvious they failed to establish any claim of fraud by the higher degree of clear and convincing evidence. As a result, we find the error here harmless.

buyer relies on the form, the seller is liable for any resulting injury. *Pedone v. Demarchi*, 8th Dist. No. 88667, 2007-Ohio-6809, ¶ 31.

{¶39} However, "[t]he doctrine of caveat emptor * * * relieves a vendor of the obligation of revealing every imperfection that might exist in a residential property." *Cardi, supra*, at 21-22, citing *Layman v. Binns*, 35 Ohio St.3d 176 (1988). Caveat emptor precludes recovery in an action by a purchaser for a structural defect in real estate when (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. *Layman*, at syllabus, citing *Traverse v. Long*, 165 Ohio St. 249 (1956).

{¶40} As has been established, there was no fraud committed by Sipes and the Rodgers had an unimpeded opportunity to examine the premises. It is well within the trial court's discretion to find that the condition complained of was discoverable on reasonable inspection, making the doctrine of caveat emptor applicable to this case.[7] Therefore, caveat emptor would properly bar the Rodgers' breach of contract claim.

{¶41} However, even if caveat emptor had been deemed inapplicable, another doctrine cited by the trial court would also bar the Rodgers' breach of

---

[7] Or in this case, it could be argued that the defect was not present at all during Sipes' ownership.

contract claim, specifically, the "as is" clause of their purchase agreement. "An 'as is' clause in a real estate contract places the risk upon the purchaser as to the existence of defects and relieves the seller of any duty to disclose." *Rogers v. Hill*, 124 Ohio App.3d 468, 471 (4th Dist. 1998). Similar to the doctrine of caveat emptor, an "as is" clause does not bar a claim for fraudulent misrepresentation or fraudulent concealment. *Id.*; *E-Poch Properties, LLC. V. TRW Automotive U.S., LLC.*, 286 Fed.Appx. 276, 281 (6th Cir. 2008). But, an "as is" clause in a contract can bar a breach of contract claim. *Tutolo v. Young*, 11th Dist. No. 2010-L-118 2012-Ohio-121, ¶ 52.

**{¶42}** Pursuant to the purchase agreement in this case, the Rodgers did ultimately take the property "as is." The pertinent purchase agreement provisions read,

> **14. Repair Period: In the event Purchaser's inspections disclose any defects in the property which are timely reported to the Seller, Seller shall have the right, for a period of 10 days after expiration of the inspection period (the repair period) to either (a) repair the defects in a manner acceptable to the Purchaser, or (b) provide other assurances reasonably acceptable to Purchaser by means of an escrow of funds at closing for the repairs or otherwise, that the defects will be repaired with due diligence and in a manner acceptable to the Purchaser.**

> **15. Right to Cancel: If Seller is unwilling or unable to repair any defect or to provide the assurances described above during the repair period, Purchaser shall have the right at the Purchaser's sole option, to cancel this contract, in which event the earnest money shall be handled as provided in Section 3 of this contract, and the parties shall be released from all other**

> **obligations. This right of cancellation shall be exercised, if at all, by giving written notice to Seller within 5 days after the expiration of the repair period.**
>
> **Failure by Purchaser to cancel this contract within such 5-day period shall constitute a waiver by Purchaser of any uncured defects, and Purchaser shall take the property "*as is*" with respect to such defects.**

(Emphasis added) (Pl.'s Ex. 1); (Def.'s Ex. D).

**{¶43}** In sum, since there is no fraud in this case, the law of caveat emptor and the law interpreting "as is" clauses would bar any other claims, including breach of contract. Therefore, we find no error with the trial court's application of caveat emptor to this case. Accordingly, the Rodgers first assignment of error is overruled.

**{¶44}** For the foregoing reasons, the Rodgers' assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**